## MADISON LUMBER CO. v. McGOWAN.

### No. 16585.

Court of Appeal of Louisiana. Orleans.

April 19, 1937.

Deutsch and Kerrigan and Burke and David Gertler, all of New Orleans, for appellant.

Legier, McEnerny & Waguespack, of New Orleans, for appellee.

McCALEB, Judge.

Dendinger, Inc., a Louisiana corporation, doing business in the city of New Orleans under the trade-name of Madison Lumber Company, brought this suit against the defendant, James McGowan, on August 15, 1936, seeking recovery of the sum of $109.22. It alleges that, on various dates between September 6, 1934, and January 22, 1935, it sold to the defendant and delivered to the Sewerage & Water Board of New Orleans, at the order of the defendant, certain merchandise more particularly described on an itemized account attached to the petition amounting in total to the sum claimed; that thereafter the defendant gave it his check to cover the amount due and that, upon receipt of the check, it marked the invoices held by the Sewerage & Water Board "paid." Plaintiff further avers that the check given to it by the defendant, in payment of the merchandise sold and delivered, was lost or misplaced by it and was never cashed, and that, therefore, defendant is indebted to it in the sum sued for.

The defendant answered the petition and denied that he is indebted to the plaintiff in any sum whatsoever. He admitted the purchase of the goods described in the invoices attached to the plaintiff's petition, with the exception of an item in the sum of $3.20, appearing on an invoice dated November 9, 1934, bearing No. 19335. He asserts that these goods were never ordered by or delivered to him but that, on the contrary, they were ordered by and delivered to the Sewerage & Water Board, from whom plaintiff has received payment. He also questions the correctness of another invoice (BO 4994), claiming that a corrected invoice bearing the same number was sent to him (wherein he was given credit for the sum of 18 cents) and that this corrected invoice has been paid. He further alleges that, after deducting the items of $3.20 and 18 cents from the amount in suit, there is a balance claimed of $105.84, which balance has been duly paid by him in two checks, after deduction of a 2 per cent. trade discount, one check for the sum of $28.20 dated September 9, 1934, and another check for $75.-50 dated February 5, 1935, both of which have been cashed by the plaintiff.

The above statement of the pleadings reveals that the only question at issue is

one of fact, viz., whether plaintiff has been paid for the goods sold and delivered to the defendant.

After hearing the evidence presented at the trial, the judge found in favor of the defendant. Plaintiff has appealed from the adverse decision.

■ Before we discuss the statements tendered in the trial court in support of the pleadings, it is well to point out that the plaintiff, having alleged that the defendant holds receipted invoices for the items sued upon, marked "paid," has the burden of establishing, by a fair preponderance of evidence, that it did not receive such payment. Counsel for plaintiff argues here that, where a plea of payment is interposed, the party relying upon it as a defense, carries the burden of demonstrating that fact to the satisfaction of the court. Such is the jurisprudence, but the cases holding thus are inapplicable to the issue before us for, here, the plaintiff, itself, has alleged that the defendant holds receipts evidencing payment (evincing a prima facie case for the defendant) and is attempting to defeat the legal effect thereof. It has been well settled in this state, beginning with the case of Gray v. Lonsdale, 10 La.Ann. 749, that: "A receipt is not conclusive against the party signing it, *but it is to be deemed prima facia evidence of the fact it asserts, and the intention it purports to express; the burden is on the party who desires to contradict or escape from it, to make out a clear case of error or fraud."* (Italics ours.)

■ Hence, where the plaintiff alleges that it had received a check from the defendant, on the faith of which it gave the defendant a receipt, it is charged with the onus of proving the averments (that the check given it by the defendant had been misplaced or lost and had never been cashed) on which it relies to nullify the presumption of the fact of payment, which is signified by the receipt itself.

■ The plaintiff has attempted to prove the allegations of its petition by only one witness, one L. A. Sander, the credit manager of the firm. Mr. Sander does not testify that the check for $109.22, which he asserts was given to him by the defendant, was misplaced or lost (as set forth in the petition). His version is that this check was stolen, together with other checks and the sum of $43 in cash, from his automobile. His evidence, respecting the theft of the check and the circumstances attending its disappearance, is most unconvincing. He states that, some time during the month of February, 1934, he was given a check of Mr. McGowan payable to the order of plaintiff for an amount, which he first says to be the sum of $75. Later, he changes his testimony and says the check was for $109. It is obvious that the time when he claims to have received the check, "February 1934," is palpably an error on his part, because none of the items in suit were purchased by the defendant until the month of September, 1934. Sander further states that he received this check at the Shirer Casket Company in New Orleans (but does not know who gave it to him); that he placed the check in his portfolio together with certain other checks and cash and that they were stolen out of his automobile by some unknown person while the car was parked on Iberville street. He did not notify Mr. McGowan that the check was stolen, but thinks he notified the Sewerage & Water Board. When asked the reason why he notified the Sewerage & Water Board instead of the defendant drawer of the check, he replies: "I don't remember— because it was the natural course of events, I guess." Later in his testimony he states that he notified Mr. McGowan of the theft but is unable to give the time when such communication was given or whether it was written or oral. The witness further relates that, when the checks and cash were stolen, he reported the loss to the police, but he does not know the date on which he advised the authorities of the larceny. The fact that the matter had been reported to the police could have been shown, in corroboration of Sander's statement, but plaintiff evidently did not see fit to bolster his vague and unsupported assertions by producing other witnesses. It is indeed strange that a business man, having valuable articles pilfered from him, would be so indefinite as to the time of the occurrence and as to what he did, either with reference to notification of law enforcement officers, or regarding his obvious duty to persons whose monetary obligations had fallen into the hands of a thief. To give credence to the testimony of this witness would tax our credulity to the breaking point, and we opine that the trial judge was correct in refusing to believe his story.

Inasmuch as the theory on which plaintiff seeks recovery is based exclusively on the testimony of Sander, its suit must be dismissed.

Aside from Sander's statement, we find, from a review of the evidence tendered by the defendant and his witnesses, that defendant has fully substantiated the fact that the items sued upon were paid in two checks, as alleged in his answer. One of these items is for $3.20, which represents an undercharge for goods sold to the Sewerage & Water Board and not to the defendant. Three items sold and delivered to defendant during the month of September, 1934, amounting in total to the sum of $28.77 (subject to a 2 per cent. trade discount), were paid by defendant's check on September 29, 1934, for $28.20. The other four items sold and delivered during the month of January, 1935, aggregating a total of $77.70 (also subject to a 2 per cent. trade discount), were paid by check of the defendant on February 5, 1935, for the sum of $75.50. These two checks were cashed and the account of the defendant has been debited by the bank for their respective amounts. It is singular to note that, although Sander testified that he marked the invoices herein sued upon "paid," at the time he received the mythical check of the defendant at the Shirer Casket Company for either $75 or $109, these receipted invoices exhibit that the first three, dated in September, are marked paid by the signature of a representative of the Madison Lumber Company which is written out in full, while the last four invoices are merely initialed by the party who marked them paid, and the signature appearing on the first three is apparently in a different handwriting from the initials upon the last four.

The trial judge was correct in dismissing the plaintiff's suit. The judgment appealed from is therefore affirmed.

Affirmed.