**STATE ex rel. MOULIN v. IDEAL SAVINGS & HOMESTEAD ASS'N.***

No. 16839.

Court of Appeal of Louisiana. Orleans.

Feb. 7, 1938.

McCloskey & Benedict and W. Sommer Benedict, all of New Orleans, for appellant.

Rayl & Loeb, of New Orleans, for appellee.

McCALEB, Judge.

The relator, appearing as agent and attorney in fact for McCloskey & Benedict (members of the New Orleans Bar), alleges that the latter are the holder and owner for value of a certain stock certificate issued by the Ideal Savings .& Homestead Association, a Louisiana corporation, and seeks to compel it to pay unto his principals the sum of $500 (the value of the stock), or, in the alternative, to issue to them a certificate in their name

*Writ of certiorari denied April 4, 1938.

for the shares owned in lieu of the certificate now in their possession.

The defense to the proceeding is that the stock certificate does not show that McCloskey & Benedict are the transferee thereof.

The matter was heard upon a rule nisi issued by the district judge and resulted in a dismissal of the relator's demand. He has appealed from the adverse judgment.

The facts of the case are undisputed, and we find them to be as follows:

On July 2, 1937, the respondent, Ideal Savings & Homestead Association, issued to a Mrs. Emma Stevens its certificate No. 3404 for five shares of the paid-up stock of the company, valued at $500. Later, Mrs. Stevens, being indebted to McCloskey & Benedict for professional services rendered to her, turned over to the latter this certificate as part payment of her obligation. On the reverse side of the certificate, there appears certain printed provisions with reference to the class of stock, dividends, etc., and underneath this writing is found the following, which is also in print:

"Received, New Orleans ———— 191— from the Ideal Savings & Homestead Association, the sum of ———— Dollars in full settlement of the within Shares cancelled by ———— in accordance with the Charter.

"[Signed]   Mrs. Emma Stevens
. . . . . . . . . . . . . . . . . . . . . .

"[Signed]   Leslie Ludlow, Witness.
"[Signed]   W. Sommer Benedict."

The sole and only question in this matter refers to the legal effect of the signature of Mrs. Stevens as above set forth. It is conceded that the signature is genuine and that the stock certificate as signed was presented to the defendant homestead for payment by Messrs. McCloskey & Benedict. Upon delivery of the certificate to the homestead, as aforesaid, it refused to issue to McCloskey & Benedict a check for the value thereof, to wit, $500, but instead delivered to these attorneys a check in that amount made payable to Mrs. Emma Stevens. It is the homestead's contention that the signature of Mrs. Stevens, appearing on the reverse side of the instrument in the manner above set forth, is nothing more than an acknowledgment that she has received money in settlement of the cancellation of the certificate.

On the other hand, the relator maintains that, by virtue of Act No. 180 of 1910, commonly known as the Uniform Stock Transfer Act, the signature of Mrs. Stevens, appearing as it does on the reverse side of the stock certificate, constitutes an endorsement in blank, and that, inasmuch as it is admitted that McCloskey & Benedict are the holder of the certificate, it becomes the ministerial duty of the homestead to pay to these lawyers its value or, in lieu thereof, to issue and deliver to them another certificate in their name.

The difficulties now encountered by Messrs. McCloskey & Benedict would not have arisen were it not for the fact that Mrs. Stevens died some time during the month of August, 1937, and, if the contention of the homestead is correct, the only remedy afforded to these gentlemen will be to open the succession of Mrs. Stevens and obtain a judgment declaring them to be the true and lawful owners of the stock.

The pertinent portion of the Uniform Stock Transfer Act, Act No. 180 of 1910, which is said to be applicable to the case, is section 1, providing:

"Title to a certificate and to the shares represented thereby can be transferred only,

"(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or

"(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby."

The relator urges that the signature of Mrs. Stevens, appearing on the dotted line underneath the portion of the reverse side of the certificate devoted to receipts, constitutes an indorsement in blank. In order to determine the correctness of this position, it is well to refer to section 20 of the Uniform Stock Transfer Act, which defines an indorsement of a stock certificate as follows: "A certificate is indorsed when an assignment or a power of attorney to sell, assign, or transfer the certificate or the shares represented thereby is written on the certificate and signed by

the person appearing by the certificate to be the owner of the shares represented thereby, or when the signature of such person is written *without more* upon the back of the certificate." (Italics ours)

It is argued that the words "without more," as used in the statute, demonstrate that the signature of a person placed on the reverse side of a stock certificate is sufficient to transfer the ownership to the holder of the certificate, even though the signature is preceded by other writing which may reasonably be said to be associated therewith.

We cannot agree with this postulation. It seems to us that the words "without more" as used in the act mean that the signature should be disconnected with any other writing appearing upon the reverse side of the stock certificate, so that the signer's intention to unqualifiedly convey title to the instrument is beyond question. If there is any writing either preceding or following the signature upon the certificate, which restricts its force and effect, then the indorsement cannot be deemed to be in blank. In the instant case, Mrs. Stevens signed her name at the identical place indicated on the reverse side of the certificate for signing a receipt, and her signature is directly associated and connected with the writing appearing above her name. The homestead was therefore justified in refusing to recognize McCloskey & Benedict as Mrs. Stevens' transferee.

It was suggested, however, during the argument of this case, that the homestead, by paying the value of the stock certificate to McCloskey & Benedict, cannot be injured. But this supposition is unsound because the heirs or creditors of Mrs. Stevens could properly demand that the homestead prove its payment of the value of the stock to Mrs. Stevens. It is true that Mrs. Stevens has given her receipt to the effect that she has obtained the value of the stock from the homestead. But a receipt given for money paid is not conclusive between the parties and may be contradicted or explained by parol evidence. See Gray v. Lonsdale, 10 La.Ann. 749, Borden v. Hope, 21 La.Ann. 581, and Madison Lumber Co. v. McGowan, La. App., 173 So. 564.

A writ of mandamus will not issue against a corporation except to compel it through its officials to perform a ministerial duty. Inasmuch as the signature of Mrs. Stevens does not constitute an indorsement in blank, as provided for by the Uniform Stock Transfer Act, the respondent rightfully refused to recognize the relator's principals as the transferee of the stock certificate.

The judgment appealed from is therefore affirmed.

Affirmed.