## LILLEY v. FIRST FEDERAL SAVINGS & LOAN ASS'N (BLACK DIAMOND LUMBER CO., Inc., Intervenor).

### No. 5936.

Court of Appeal of Louisiana. Second Circuit.

Feb. 7, 1940.

Rehearing Denied March 6, 1940.

E. W. & P. N. Browne, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin and Coleman & Morgan, all of Shreveport, for appellee.

DREW, Judge.

The plaintiff, Mrs. Nellie A. Lilley, instituted this suit against the First Federal Savings & Loan Association, of Shreveport, asking to be recognized as owner of a certain certificate of stock, designated as No. 13,104, Index "M" No. 261, and for the issuance to her of a new certificate in lieu of the original, together with the dividends which had accrued thereon since March 15, 1933.

The answer of the Association sets forth that the stock had also been claimed by the Black Diamond Lumber Company, Incorporated, of Doddridge, Arkansas, averring its willingness to transfer the stock to the party found by the court to be the owner thereof, further filing the certificate of stock in this proceeding for identification.

The Lumber Company filed an intervention claiming ownership of the stock under purchase from George O. Lilley, deceased husband of plaintiff, and M. L. Cooper, who were alleged to have represented to the intervenor that they were the lawful owners in indivision of the said share of stock at the time of the alleged transfer.

The evidence adduced on the trial of the cause shows that in March, 1933, Mrs. Lilley transferred certificates representing four shares in the Shreveport Mutual Building & Loan Association to Mr. A. J. Murff, who was acting as attorney for five negroes, known as the Moorey Heirs, who owned a certain piece of real estate that Mrs. Lilley wished to buy. This stock, valued at $200 per share, was to represent a portion of the purchase price. It seems that Columbus Moorey, one of these heirs, could not or would not enter into the transaction at that time, resulting in the purchase of an undivided four-fifths' interest in the property by Mrs. Lilley, with only three shares of stock being used as part payment for the property. The remaining share, which was issued in the name of "A. J. Murff, Attor-

ney", was indorsed by Mr. Murff by signing on the back of the certificate the name "A. J. Murff", and adding the word "Attorney" in the same manner in which the certificate was issued. He then left the stock at the office of the Shreveport Mutual Building Association, presumbly, to be returned to Mrs. Lilley.

On August 21, 1933, Mr. George Lilley and Cooper went to the office of Mr. Ben E. Coleman and had in their possession this certificate of stock. It appears that Mr. Coleman, an attorney representing the Black Diamond Lumber Company, had in his possession an unpaid check, drawn by Mr. Cooper and payable to the Lumber Company, in the sum of $93. Both Mr. Lilley and Mr. Cooper informed Mr. Coleman that they were the owners in indivision of this share of stock. He then, together with these gentlemen, went to the First National Bank and drew out $107, representing the difference in the value of the stock and the amount owed the Lumber Company by Cooper, and gave this money to the two men in exchange for the certificate of stock. He then took this certificate of stock and mailed it to Mr. E. L. Stout, trustee of the Lumber Company. Mr. Stout then mailed this certificate to Mr. R. H. Miller, of Minden, who in turn mailed it to the Shreveport Mutual Building Association with the request that the new certificate be issued in favor of the Lumber Company. Nothing further happened in this matter until July, 1936, when Mrs. Lilley instituted this suit against the First Federal Savings & Loan Association, successor to the Shreveport Mutual Building Association, asking to be recognized as owner of the stock and for the issuance of the certificate in her name.

The Lumber Company filed its intervention and the lower court rendered judgment recognizing the intervenor as the owner of the stock. From this judgment, plaintiff is now prosecuting this appeal.

Section 1 of the Uniform Stock Transfer Act, Act No. 180 of 1910, provides:

"Title to a certificate and to the shares represented thereby can be transferred only,

"(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, * * *."

Section 20 of the same Act provides: "A certificate is indorsed when an assignment or a power of attorney to sell, assign, or transfer the certificate or the shares represented thereby is written on the certificate and signed by the person appearing by the certificate to be the owner of the shares represented thereby, or when the signature of such person is written without more upon the back of the certificate. In any of such cases a certificate is indorsed though it has not been delivered."

It is urged on the part of appellant that the signature on the back of the certificate, as the word "attorney" followed the signature of Mr. Murff, did not constitute an indorsement in blank under the terms of the Act. In the case of State ex rel. Moulin v. Ideal Savings & Homestead Association, La.App., 178 So. 521, 523, the Court, in interpreting the above provision, made the following statement: " * * * It seems to us that the words 'without more' as used in the act mean that the signature should be disconnected with any other writing appearing upon the reverse side of the stock certificate, so that the signer's intention to unqualifiedly convey title to the instrument is beyond question. If there is any writing either preceding or following the signature upon the certificate, *which restricts its force and effect,* then the indorsement cannot be deemed to be in blank. In the instant case, Mrs. Stevens signed her name at the identical place indicated on the reverse side of the certificate for signing a receipt, and her signature is directly associated and connected with the writing appearing above her name. The homestead was therefore justified in refusing to recognize McCloskey & Benedict as Mrs. Stevens' transferee." (Italics ours).

The word "attorney", as used in the indorsement of the stock, is nothing more than a part of the signature of the person appearing on the face of the certificate as owner. The certificate was issued to A. J. Murff, Attorney, and it is logical to assume that he wrote "A. J. Murff, Attorney" on the back of the certificate with no intention to qualify or restrict the indorsement by so signing.

Sections 5, 6 and 7 of the Act provide as follows:

"The delivery of a certificate to transfer title in accordance with the provisions of section 1 [§ 1180], is effectual, except as provided in section 7 [§ 1186], though made by one having no right of possession and having no authority from the owner of the certificate or from the person purporting to transfer the title. (Acts 1910, No. 180, § 5.)"

"1185. The indorsement of a certificate by the person appearing by the certificate to be the owner of the shares represented thereby is effectual, except as provided in section 7 [§ 1186], through [though] the indorser or transferor,

"(a) Was induced by fraud, duress or mistake, to make the indorsement or delivery, or

"(b) Has revoked the delivery of the certificate, or the authority given by the indorsement or delivery of the certificate, or

"(c) Has died or become legally incapacitated after the indorsement, whether before or after the delivery of the certificate, or

"(d) Has received no consideration. (Acts 1910, No. 180, § 6.)"

"1186. If the indorsement or delivery of a certificate,

"(a) Was procured by fraud or duress, or

"(b) Was made under such mistake as to make the indorsement or delivery inequitable; or if the delivery of a certificate was made

"(c) Without authority from the owner, or

"(d) After the owner's death or legal incapacity, the possession of the certificate may be reclaimed and the transfer thereof rescinded, unless:

"(1) The certificate has been transferred to a purchaser for value in good faith without notice of any facts making the transfer wrongful, or

"(2) The injured person has elected to waive the injury, or has been guilty of laches in endeavoring to enforce his rights.

"Any court of appropriate jurisdiction may enforce specifically such right to reclaim the possession of the certificate or to rescind the transfer thereof and, pending litigation, may enjoin the further transfer of the certificate or impound it. (Acts 1910, No. 180, § 7.)" Dart's Stat. §§ 1180, 1185, 1186.

 The validity of Mr. Murff's indorsement is not questioned, nor is any proof offered that might lead us to believe that it was procured through error, fraud or duress. The only question presented that might serve as a basis of rescission of the transfer of the certificate is the contention that the stock might have been transferred to Cooper and Lilley by the Shreveport Mutual Building & Loan Association without authority from the record owner, Mr. Murff. No one in the office of the present Association, nor does the officer who had charge of such transfers and deliveries at that time, remember delivering the stock to the parties. The stock nevertheless came into their possession and it must be assumed that it was delivered to them, even though such delivery might have been unauthorized. Section 7 of the Act provides that in a situation such as this, the certificate may be reclaimed *unless the certificate has been transferred to a purchaser for value in good faith and without notice of any facts making the transfer wrongful.* The Black Diamond Lumber Company meets all these requirements. We have no reason to believe that it did not act in absolute good faith nor is evidence offered that might indicate it should have had reason to believe the transferrors were not the owners of the stock. Any right that Mrs. Lilley might have had to reclaim the stock was lost by such transfer. The purpose of the Act is to facilitate the transfer of such stock and to hold that such a transfer as the one before us was invalid, would defeat the purposes of the Act.

Plaintiff has sued only to be declared the owner of this particular share of stock. We are therefore not concerned with any other rights she might have growing out of the transaction.

The decision of the lower court is, therefore, affirmed with costs of this appeal to be borne by appellant.