174 So.2d 898 (1965)
Billie Jean Bankhead DUNHAM
v.
Ted F. DUNHAM, Jr.
Billie Jean Bankhead DUNHAM
v.
Ted F. DUNHAM.
Ted. F. DUNHAM
v.
Ted F. DUNHAM, Jr., et al.
Ted F. DUNHAM, Sr.
v.
Ted F. DUNHAM, Jr., et al.
Nos. 6363-6366.
Court of Appeal of Louisiana, First Circuit.
April 12, 1965.
Rehearing Denied May 24, 1965.
*900 Sylvia Roberts, of H. Alva Brumfield, Baton Rouge, for appellant.
John S. White, Jr., of Kennon, White & Odom, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
These four cases, consolidated for both trial and appeal, in essence involve issues incidental to an action to partition the property belonging to the community of acquets and gains which existed between plaintiff, Billie Jean Bankhead Dunham, and her former husband, Ted F. Dunham, Jr., following a divorce which dissolved the bonds of matrimony theretofore existing between them.
The precise issues posed will best be understood in the light of the following summation of the subject matter of the several actions involved.
In the matter entitled "Billie Jean Bankhead Dunham v. Ted F. Dunham, Jr.", Number 6363 on our docket, plaintiff seeks partition of the property belonging to the community which existed between her and her former spouse. After inventory was taken and filed, plaintiff moved to traverse on the ground certain community assets were omitted therefrom and the appraisals of property listed were erroneous and inadequate. Defendant, Mr. Dunham, Jr., also moved to traverse the inventory on the ground certain immovable property listed therein was improperly included because it had been previously seized and sold by executory process in satisfaction of a note in the sum of $61,000.00 secured by mortgage, said seizure and sale having occurred in a proceeding entitled "Ted F. Dunham, Sr. v. Ted F. Dunham, Jr.", bearing No. 79,544 on the docket of the Nineteenth Judicial District Court, East Baton Rouge Parish. Mrs. Dunham, Jr., intervened in the aforesaid executory proceeding but the issues presented in that action are not presently before us.
Suit Number 6364 on our docket entitled "Billie Jean Bankhead Dunham v. Ted F. Dunham, Sr., and Ted F. Dunham, Jr." 174 So.2d 914 is an action by the wife to have the hereinabove mentioned $61,000.00 promissory note (secured by mortgage on the family home of Mr. and Mrs. Dunham, Jr.) declared invalid for want of consideration and as a simulation in fraud of her community property rights. The note in question was executed by Mr. Dunham, Jr. to Mr. Dunham, Sr., his father.
In cause Number 6365 on our docket entitled "Ted F. Dunham v. Ted F. Dunham, Jr. and Billie Jean Bankhead Dunham," 174 So.2d 914, plaintiff seeks deficiency judgment in the sum of $29,101.10 against his said son and former daughter-in-law for the unpaid balance remaining due on the $61,000.00 mortgage note following judicial sale of the mortgaged homestead pursuant to the hereinabove referred to foreclosure under executory process.
The action entitled "Ted F. Dunham, Sr. v. Ted F. Dunham Jr. and Billie Jean Bankhead Dunham", 174 So.2d 914 number 6366 on the docket of this Court, is a suit on a *901 promissory note executed by defendant husband during the existence of the community of acquets and gains in payment for and secured by pledge of 62 shares of stock of a corporation known as Bayou Rentals, Inc., purchased by defendant from plaintiff.
These several matters were disposed of by the trial court as follows:
In suit Number 6365 (number 81,910 in the court below) judgment was rendered in favor of plaintiff, Ted F. Dunham, Sr., for the amount of the deficiency judgment sought and declaring the obligation to be a debt owed by the community which previously existed between defendants, Mr. and Mrs. Dunham, Jr. In Number 6366 (Number 82,083 below) judgment was rendered in favor of plaintiff, Ted F. Dunham, Sr., as prayed for recognizing the pledge of subject stock. Defendant, Mrs. Dunham, Jr. appealed both said judgments; defendant, Dunham, Jr. did not appeal either decree.
The action of Mrs. Dunham, Jr., Number 6364 (76,937 below) to declare invalid the $61,000.00 note held by Dunham, Sr., was dismissed by our learned brother of the trial court and from said judgment plaintiff, Mrs. Dunham, Jr., has appealed.
In suit Number 6363 (72,112 below), the action of Mrs. Dunham, Jr. to partition the community, the trial court:
I. Ordered the inventory amended and revised to reflect the following:
A. The immovable property seized and sold by executory process no longer constituted any part of the community property.
B. A list of the movable property found to belong to the community, including the household furniture, 62 shares of stock in Bayou Rentals, Inc., subject to the pledge thereof, shares of stock in two country clubs, various insurance policies on the life of the husband, and the following disputed items:
(1) An undivided one-half interest in five certificates for 1 share each of the corporate stock of H. E. Allen, Inc.;
(2) An undivided one-half interest in two certificates representing a total of 47 shares of Class A corporate stock of Allen-Wallace Construction Company; and
(3) An undivided one-half interest in one certificate for 157½ shares of Class B stock of Allen-Wallace Construction Company.
II. Recognized the debts of the community, none of which are complained of except the following:
A. The deficiency judgment in the sum of $29,101.10, with interest, rendered in favor of Dunham, Sr., in number 6365 on the docket of this Court; and
B. Judgment in the aggregate of $6200.00, with interest, in favor of Dunham, Sr., in suit bearing our docket number 6366.
III. Decreed the Community assets be sold to satisfy the community obligations and effect a partition.
IV. Denied the claim of Mrs. Dunham, Jr. for $1,728.26 with legal interest, representing amounts allegedly paid by said wife out of her own funds to prevent foreclosure of the mortgage affecting the community home when the husband failed to make said payments.
V. Rejected the claims of both husband and wife for attorney's fees; and
VI. Ordered defendant husband to deliver to his former spouse certain personal effects in his possession but found by the court to belong to the wife's separate and paraphernal estate.
*902 In appealing all of the aforesaid judgments Mrs. Dunham, Jr. (Sometimes hereinafter variously referred to as "plaintiff", "wife", or "appellant"), lists the following specifications of error.
"I. THE TRIAL COURT ERRED IN HOLDING THAT TED F. DUNHAM, JR.'S PORTION OF THE ACCUMULATED INCOME DERIVED FROM THE TED F. DUNHAM TRUST FROM SEPTEMBER 6, 1948, UNTIL JULY 30, 1958, SHOULD NOT BE CONSIDERED COMMUNITY PROPERTY AND INCLUDED IN THE INVENTORY."
(This specification relates to the judgment in the partition suit, number 6363, insofar as it does not recognize this trust income among the items of movable property belonging to the community.)
"II. THE LOWER COURT ERRED IN HOLDING THAT TED F. DUNHAM, JR. DID NOT OWN FIFTY PERCENT OF H. E. ALLEN, INC. AND ALLEN WALLACE CONSTRUCTION COMPANY."
(This specified error refers to the portions of the judgment in the partition suit shown as I B (1), (2) and (3) above.)
"III. THE TRIAL COURT ERRED IN HOLDING THAT THE NOTE FOR $61,000.00 AND THE MORTGAGE GIVEN AS SECURITY THEREFOR WERE VALID AND BINDING DEBTS OF THE COMMUNITY."
(This specified error affects the judgments in suits numbers 6364, 6365, and to the extent that the judgment in number 6363 recognizes the judgment of 6365 as a debt of the community, it affects that judgment also.)
While none of the errors specified by counsel for appellant complain of the judgment rendered in suit number 6366, in brief and oral argument before this court counsel for appellant contends the judgment rendered in favor of plaintiff therein, Ted Dunham, Sr., and decreeing said obligation a community debt, is erroneous and should be set aside.
A better understanding of the contentions made on behalf of appellant will, we believe, be afforded by narration in some detail of a chronology of certain uncontroverted events and circumstances which preceded and precipitated the several suits before us.
Appellant and Ted Dunham, Jr. were married September 6, 1948, and resided together as man and wife until the year 1958, when there occurred a voluntary separation between them, following which plaintiff instituted suit for separation from bed and board. On July 30, 1958, plaintiff was granted a judicial separation from her said husband and eventually a final divorce on August 18, 1959.
Prior to his marriage Ted F. Dunham, Jr. (sometimes hereinafter referred to simply as "defendant" or "appellee") was in the employ of a corporation known as Anderson-Dunham, Inc., a concern wholly owned by his parents, Mr. and Mrs. Ted F. Dunham, Sr. The record discloses that Anderson-Dunham, Inc. is a large well established firm situated in the city of Baton Rouge and specializing in the manufacture, sale and distribution of ready mixed concrete, concrete products such as pipe and culverts, structural steel, steel culverts and other concrete and steel construction supplies. Since his connection with Anderson-Dunham, Inc., defendant was not paid a fixed salary but drew upon the firm such amounts as he desired with the full permission, consent and approval of his father, Ted F. Dunham, Sr., President of the corporation.
*903 Over the years defendant maintained a debit which reflected his withdrawals or checks drawn on the corporation for any sums he desired irrespective of the use to which the same were put. The records of the corporation show each and every such withdrawal and reveal defendant's continuing indebtedness to his employer which obligation annually grew progressively larger. As a rule liquidation of defendant's account was accomplished by the granting of an annual Christmas bonus which it was the custom of the corporation to bestow upon all its employees when the earnings of the firm made such generosity possible. It was not uncommon for defendant and other key employees of the firm to receive annual bonuses of $10,000.00 or more. During the period October 23, 1951, to December 13, 1957, defendant's account showed debits of $134,726.79, and credits of $72,270.12, leaving a balance due the corporation of $62,456.67.
Following defendant's marriage to plaintiff, defendant continued in the employ of his father's said concern pursuant to the arrangement hereinabove noted. Over the years defendant's father, a person of considerable means, afforded defendant and defendant's younger brother, Richard, opportunities to invest in lucrative enterprises affected either by the father's connections or influence. So far as the record discloses this arrangement continued after defendant's marriage virtually without change except as hereinafter otherwise noted.
With the foregoing history and background in view, we shall consider first the contention of appellant that the trial court erred in declaring the judgment rendered against defendant in favor of his father in suit number 6366 constitutes a community obligation. This action was predicated on a demand promissory note in the sum of $6,200.00 executed by defendant to his father on May 1, 1957.
According to the testimony of Dunham, Sr., Richard Dunham, defendant's brother, and defendant, a corporation known as Bayou Rentals, Inc. was incorporated by the Senior Dunham prior to May 1, 1957, its purpose being to acquire machinery and equipment intended solely for lease to Anderson-Dunham, Inc., and other corporations owned and controlled by Dunham, Sr. The elder Dunham offered each of his said sons an opportunity to purchase slightly less than 25% of the capital stock of Bayou Rentals, Inc. More precisely, each son was offered $6,200.00 of the stock, the elder Dunham thereby retaining and reserving $12,600.00 of the shares thus insuring his complete control of the venture. In payment for the shares purchased by his sons, he accepted the promissory note of each, payable on demand in the sum of $6,200.00 secured by a pledge of the stock. In 1961, the elder Dunham demanded payment of the notes given in representation of the purchase price for the stock sold his sons in Bayou Rentals, Inc.; Richard Dunham, being unable to pay, voluntarily surrendered his stock to his father whereupon his note was marked paid and returned to him. Defendant, being unable to raise the required funds was sued by his father who sought judgment for the amount of the note together with recognition of his lien on the pledged stock.
The circumstances suggested by appellant as raising an inference of fraud and indicative of invalidity and simulation of the debt and pledge presently under consideration, are the relationship between the debtor and creditor, and the fact that the elder Dunham permitted his son, Richard, to retransfer his stock in satisfaction of the debt while in the case of appellee he instituted suit after demand. In this connection it is significant that the Senior Dunham freely conceded he did not make the same arrangements with defendant because "I didn't feel like I could do it, because of the controversy in these lawsuits."
Appellant infers the suit on the note in question was in fraud of her rights inasmuch as the record shows the value of defendant's stock in Bayou Rentals, Inc. was many times the amount of the indebtedness *904 outstanding thereon consequently appellee could easily have made arrangements to borrow funds to pay the note. In this regard George A. Lambert, Certified Public Accountant, appearing on behalf of appellant stated that examination of the books of the corporation showed the book value of defendant's share to be in excess of $34,000.00, based on the accelerated schedule employed by the firm's own accountants in depreciating corporate assets and an even greater book value based on Lambert's depreciation of assets on the straight line method. We fail to see wherein plaintiff has ground for complaint. Had the Senior Dunham accepted surrender of defendant's highly appreciated stock in satisfaction of the comparatively low acquisition value, we could perceive more merit in appellant's complaint.
What fraud supposedly resulted from the foregoing events is difficult to ascertain. If the debt was a sham (as appellant insists) and the transfer of stock a simulation, then the stock must either still be the property of the elder Dunham or it was a gift to the son and consequently a part of the latter's separate estate. If we conclude the purported transfer was without consideration, it necessarily ensues that either no title passed or the transaction was a gratuity. Both vendor and purchaser maintain the transaction was a conveyance of the stock in consideration for a note which was produced and sued upon. The attending circumstances convince us, as it did the Honorable Trial Judge, that the transaction was a bona fide sale. The stock thereby became a community asset and the note represented a community obligation.
Tate v. Tate, La.App., 12 So.2d 506, involved circumstances almost identical to those in the case at bar. The court therein held the relationship of father and son between pledgor and pledgee coupled with the pendency of a suit by the son's wife was not sufficient per se to characterize a debt and pledge a simulation. The court therein pointed out that all that is necessary to render valid a pledge of corporate stock is the actual delivery of the securities, LSA-C.C. Article 3158. We endorse the foregoing proposition as well as the premise that the presumption of validity of a note and pledge, accompanied by delivery and supported by the uncontradicted testimony of the only persons having knowledge of the transaction, must stand in the absence of evidence tending to characterize such transaction as fraudulent or simulative.
In the case at bar the fact that the stock is supposedly more valuable at present than when purchased would tend, in our view, to negate any presumption of fraud. It is an asset of the community in which appellant owns an undivided one-half interest.
For the foregoing reasons the judgment in suit Number 6366 in favor of Ted F. Dunham, Sr. and against Ted F. Dunham, Jr. and Billie Jean Bankhead Dunham, in the sum of $6,200.00 will be affirmed. We note that appellee therein, Ted F. Dunham, Sr., asks in brief for damages for a frivolous appeal. Said appellee, however, did not answer appellant's appeal, therefore, his said demand cannot be considered.
We shall next consider appellant's claim that one-half of the accumulated earnings of a trust fund settled by the elder Dunham upon defendant was erroneously excluded from the community assets by the trial court.
On May 31, 1942, more than seven years prior to appellant's marriage to the younger Dunham, the senior Dunham established a trust pursuant to the provisions of Act 81 of 1938, (subsequently designated LSA-R.S. 9:1791 et seq. and now replaced by the current Trust Code), by act of donation inter vivos. The corpus of the trust consisted of a dragline, twelve trucks including readimix concrete units, two automobiles, sundry equipment and the profits accrued or to be accrued from settlor's one-half interest in the partnership known as the "Bill Pugh Company." Named as trustees were Katherine O. Dunham, (wife of settlor), Ernest D. Wilson and Owen W. Ware; provision *905 being made for remuneration for their services. The trustees were invested with unlimited powers with respect to the corpus of the trust, within the provisions of the Trust Estates law, including authority to sell or lease any part thereof, the power to lease extending to terms exceeding the life of the trust.
The trust provides for its termination ten years after Ted F. Dunham, Jr. reached the age of 21 years, at which time the trustees are obliged to deliver the corpus to young Dunham and his brother, Richard, beneficiaries, share and share alike.
The pertinent provisions of the document stipulate that the income therefrom is to be paid to the settlor up to a maximum of $500.00 monthly. In the event the corpus failed to produce income aggregating $500.00 monthly, settlor was to receive the entire monthly earnings. Income in excess of $500.00 per month was to be retained by the trustees until the succeeding anniversary date of the trust and at that time added to the corpus. Any portion of the income owed settlor but not paid him during the year became part of the corpus on the next anniversary date. The trust further recites that after May 31, 1952, no income therefrom would accrue to settlor whose beneficial interest was declared terminated as of that date. Finally, it was stipulated all income produced subsequent to May 31, 1952, was to be added to the principal on each anniversary date.
Defendant attained the age of 21 years in January, 1950, therefore, by its own terms the trust terminated January, 1960, two years after rendition of the judgment of separation which dissolved the community of acquets and gains which existed between plaintiff and defendant. It is plaintiff's contention one-half of the income produced by the trust during the period September 1, 1949, and July 31, 1958, fell into the community. Plaintiff's expert witness, Lambert, examined the trust records and concluded that between the crucial dates net trust income aggregated $42,220.95, one half of which, or the sum of $21,110.48, constituted a community asset.
In contending one-half of the trust revenue fell into the community, astute counsel for appellant first contends the trust itself provides all net monthly income in excess of $500.00 is payable to the named beneficiaries for their maintenance and education. We have carefully reviewed all the evidence and find no support for such contention in the record. Appellant produced a statement of community assets prepared by her witness, Lambert, including a summation of the trust provisions. Exhibit E thereof states net trust income in excess of $500.00 per month is payable to the beneficiaries for their education and maintenance. However, we have compared the statement with the terms of the trust itself and find no such provision in the trust document. On the contrary the trust specifically provides all income not distributed to settlor is to be added to the corpus as hereinabove previously shown.
Learned counsel for appellant next contends the aforesaid trust income fell into the community between plaintiff and defendant pursuant to the terms of LSA-C.C. Article 2404 which provides, inter alia, that the profits of all effects of which the husband has the administration and enjoyment, either of right or in fact, fall into the community between husband and wife. In support of this argument counsel also cites and relies upon that line of jurisprudence holding that income from the husband's separate property falls into the community under authority of Article 2404, supra.
Peltier v. Begovich, 239 La. 238, 118 So.2d 395, relied upon by appellant, is clearly inapposite to the case at bar. In the Peltier case, supra, the disputed income was from oyster leases executed by the husband on his separate property before his marriage. Clearly such earnings were a community asset since they were profits enjoyed by the husband from property over which he exercised administration.
*906 Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169, also relied upon by plaintiff is likewise inapplicable to the instant case. In the Messersmith case, supra, the dispute concerned the value of an individual life policy issued the husband during the marriage pursuant to a group policy with his employer. The wife contended she should be recognized as entitled to half the value of the policy or the community credited with half the value of the premiums paid. The husband contended the item was valueless. The court held the wife entitled to an undivided half interest in the particular asset since it was property. The court further held the asset in question did possess value because it included contract rights and obligations to receive money or other benefits to become due in the future notwithstanding its contingency upon the occurrence of an event at an uncertain time.
It is significant that in the Messersmith case, supra, no contention was made that the policy in question did not fall into the community; the husband merely contended it had no value. Counsel for appellant apparently implies the income of the trust in question fell into the community of acquets and gains existing between the parties at bar under the language in the Messersmith case which counsel evidently interprets as holding that benefits and contract rights which become due at a contingent future date, from the separate estate of the husband, fall into the community. We do not so construe the language of the cited case. The case in question dealt with an asset acquired during the marriage with community funds and which, therefore, was clearly a community asset. It did not concern a separate asset of the husband.
In the case at bar whatever rights defendant had in and to the corpus of the trust clearly fell into his separate estate as a gift from his father. As to income, fruits or effects produced thereby, defendant lacked the enjoyment thereof both in right and in fact, by the very terms of the trust itself. So long as the trust lasted, appellant was prohibited from receiving any income therefrom.
Learned counsel for appellant also relies upon Burglass v. United States, 76 F.Supp. 904, and United States v. Burglass, 172 F.2d 960, in which a Federal District Court and the United States Fifth Circuit Court of Appeal interpreted the Louisiana Trust Estates Act. The facts in the cited authorities were as follows: A testamentary trust was created by the last will and testament of settlor for the benefit of testator's four surviving children. Two of the beneficiaries, including plaintiff, and a third person were named as trustees. Pursuant to the trust provisions the same beneficiaries transferred to the trust certain property inherited by them from the estate of their mother. Plaintiff reported his income from the trust as belonging to the community existing between him and his wife for Federal Income Tax purposes. The Internal Revenue Department, however, considered such income plaintiff's separate property and compelled plaintiff to report said income and pay taxes thereon as separate property. Plaintiff paid the taxes under protest and sued for a refund. The Federal District Court held the trust was separate property but the income was community property basing its conclusion on the following statement:
"* * * title or ownership of the property in trust here was vested in the heirs at the death of the father, subject only to the limited trust. Plaintiff's management or administration under the trust can not be distinguished from one where the heirs might have, by agreement, continued the ownership in indivision and managed or administered it jointly. The law, Article 2402 of the Code, does not say that fruits or profits of the separate estate fall into the community only when administered exclusively by the husband." (Emphasis by that court)
In affirming the decision of the Federal District Court, the Fifth Circuit Court of *907 Appeal stated the following in United States v. Burglass, 172 F.2d 960:
"While the act states that a trust shall be created when a person, in compliance with the provisions of the act, transfers the legal title to property to a trustee in trust for the benefit of himself or a third person, the provision does not change the Louisiana law of inheritance; and, under that law, as stated by the court below, appellee and his coheirs became, by operation of law, the owners in indivision of a portion of the properties at the instant of the death of the mother and of the balance of the properties at the instant of the death of the father. The interest inherited from the father was transmitted to them subject to the terms of the testamentary trust. After the probation of the father's will creating the trust, ownership of the property was in the appellee and his coheirs, but the legal title was in the trustees, the trustees holding the property for the benefit of the appellee and his coheirs (cestuis que trust)."
The Court of Appeal further stated that administration by the trustees was equivalent to administration by the beneficiaries because the trustee is in effect the agent or representative of the beneficiary and his acts become the acts of the beneficiary-owner.
We do not agree with the pronouncements in the cited federal cases to the effect that upon creation of a trust ownership of the corpus vests in the beneficiary or beneficiaries, subject to the trust provisions. We also disagree with the proposition that ownership of the corpus rests in the beneficiary while title is vested in the trustee. We consider these statements to be contrary to the law of trusts announced to date by the jurisprudence of this state.
Our appreciation of the nature of a trust as considered by the laws of this state, is that it is a special type of fidei commissum, exempt from the general prohibition found in LSA-C.C. Article 1520 by virtue of specific legislation. Prior to adoption of a trust act in 1920, (and subsequently at various times), a disposition of property in trust to be delivered by the trustee to a third party at some time was characterized a fidei commission expressly prohibited by the terms of LSA-C.C. 1520. Since the adoption of the trust statutes, trusts meeting the statutory requirements are given effect notwithstanding their possession of all the characteristics of the fidei commissa proscribed in Article 1520, supra. Succession of Manthey, 159 La. 743, 106 So. 289; Breaux v. Breaux, 218 La. 795, 51 So.2d 73.
We believe the intent of our trust laws as expressed in the language employed therein by the legislature, is to clearly and unmistakably vest both title and ownership of the trust corpus in the trustee. The trustee is obliged to perform and execute the terms of the trust and is burdened with certain other obligations imposed by the trust statute. At the termination of the trust, the trustee is bound to transfer the corpus to the ultimate beneficiaries or cestuis que trustent. In the case of testamentary and inter vivos trusts, the trust is a means of effecting a gratuitous transfer to the beneficiary and retains the character of a gift or donation so far as the beneficiary is concerned. Where, however, the trust is created by agreement of two or more persons who mutually contribute to the corpus, such a contribution may perhaps lose its characterization as separate funds of the contributor dependent upon the circumstances of each case.
We believe it was unnecessary for the Court in the Burglass case to hold that title and ownership were divided in order to conclude the corpus of the trust involved was separate property. We also believe it was unnecessary for the court to therein hold an agency relationship existed between the trustee and the beneficiaries and thereon base the premise that the beneficiaries *908 administered the corpus thereby characterizing the income as community property.
It appears to be settled law in this state that a trustee is not an agent. Buck v. Haas, 180 La. 188, 156 So. 217. We approvingly cite the following language appearing in the Buck case, supra:
"* * * plaintiff thereby acquired, as trustee, the legal title to the notes, and, as owner of the legal title, he had the capacity to sue upon them." (Emphasis added.)
Nothing herein contained is to be considered as an expression of opinion on our part regarding the correctness or incorrectness of the result reached in the Burglass case, supra. We do say, however, we believe the result reached could have been attained more consistently with the laws of this state by the Fifth Circuit Court of Appeal simply stating Louisiana jurisprudence supports the following observations made by that tribunal:
"As the receipt of fruits, issues, or profits constitutes enjoyment, we think the husband-beneficiary had the administration and enjoyment, in law and in fact, of the effects of the trust estate."
The factual situation in the Burglass case, however, is vastly different from that in the case at bar. The income from the trust involved herein was not distributable to the beneficiaries during the life of the trust. From its inception on May 31, 1942, until May 31, 1952, the income of the trust was distributable up to $500.00 per month to the settlor rather than the beneficiaries of the trust. All undistributed and undistributable income lost its character as income on each next succeeding anniversary date thereupon becoming part of the corpus. Granting the trust property when eventually transferred to and received by the beneficiaries in accordance with the provisions of the agreement, will be the separate property of the beneficiaries, it nevertheless remains neither has received or realized any income from it. We find it difficult to conceive how an individual can enjoy that which he has not yet received nor has the right to receive.
In disposing of this issue adversely to appellant our learned brother below likened the undistributed income of the trust in question to stock dividends considered in Daigre v. Daigre, 228 La. 682, 83 So.2d 900, 55 A.L.R.2d 951. In the Daigre case, supra, the Supreme Court held accumulated dividends on stock were not the fruit of the husband's separate property and therefore did not fall into the community but were an enhancement in value occurring in the ordinary course of events and consequently remained the separate property of the husband.
We, however, prefer to base the present decision on the proposition that LSA-C.C. 2404 contemplates income or fruits of the husband's separate property of which he has the enjoyment in right or in fact, pretermitting all consideration of his concurrent administration of the effects which produced them. It is clear beyond all doubt that in the instant case defendant husband had not the enjoyment of the fruits of the trust either in right or in fact because the trust expressly provided he was to receive no portion thereof until its termination which occurred subsequent to dissolution of the community between plaintiff and defendant. Inasmuch as defendant did not receive and lacked even the right to receive the income of the trust during the existence of the community, it follows he had no enjoyment of its effects (fruits) either in fact or in right consequently said income formed no part of the community which existed between the parties at bar. Assuming arguendo, defendant was "owner" of the trust corpus as held in the Burglass case, supra, we believe the same result would obtain herein considering defendant did not have the capacity to enjoy the effects of the corpus either in right or in fact.
Appellant next specifies as error the trial court's holding that defendant owned only an undivided one-half interest in the certificates *909 of stock of H. E. Allen, Inc. and Allen-Wallace Construction Company, Inc. It is appellant's contention that defendant (and therefore the community) owned the shares in their entirety. The stock involved consists of ten shares in H. E. Allen, Inc. Said shares are represented by certificates numbered 1 through 5, inclusive, for two shares each at $100.00 per share or a total of $1,000.00, and constitute fifty per cent of the outstanding capital shares of said corporation. The precise question is whether these ten shares are wholly owned by defendant or by appellee and his brother, Richard E. Dunham, in indivision. The shares in question were issued to H. E. Allen pursuant to organization of the corporation on November 10, 1955, and by him endorsed in blank that same day. Since their issuance, the shares were held by defendant.
On July 30, 1958, Allen-Wallace Construction Company, Inc. had 315 shares of non-voting stock and 94 shares of voting stock outstanding. The certificates of this corporation described in the inventory herein represent fifty per cent of the outstanding shares of said corporation. The certificates in question were issued July 2, 1956, following certain stock redemptions and cancellations pursuant to a correction showing 94 outstanding voting shares rather than 100. The initial stock issue occurred October 1, 1954, but the largest distribution was to H. Earl Allen on November 7, 1955, on which date H. E. Allen, Inc. was organized.
Appellant points out that the assignment on the reverse of the several certificates reveal the signature of the transferror is in a handwriting different from the remainder of the endorsement indicating date of transfer and the names of the transferees. Plaintiff further contends that inscription of the name of Richard E. Dunham along with that of defendant as transferee was done in an effort to defraud her of her rights considering it reduced the community interest from the whole of said certificates to one-half thereof.
Over the strenuous objection of counsel for appellant, Mr. H. E. Allen testified he endorsed the several certificates in blank, and whereas, he did not complete the endorsements by inserting the names of the transferees, it was his intention to transfer the shares to defendant and his brother, Richard, jointly. In admitting such evidence the trial court did not err as plaintiff strenuously insists. The intent of the transferror with respect to delivery of stock can be shown by parol evidence. Fontenot v. Drewniak, La.App., 181 So. 619. Stock certificates endorsed in blank are presumed to have been lawfully delivered to their possessor, but if they are being held for others, this fact may be shown. Lilley v. First Federal Savings & Loan Assn., La.App., 194 So. 901.
Mr. Allen further testified the stock was issued in his name for convenience only and that it remained in his name on the books of the corporations even after its transfer to defendant and his brother.
Defendant testified that although he owned one-quarter of the stock in the aforesaid corporations, the shares were issued in the name of Allen who endorsed the certificates and delivered them to appellee. Upon receipt of the certificates, defendant filled out his own name and that of his brother as transferee on the H. E. Allen, Inc. certificates because as to the latter stock his own name was already inserted as transferee but by whom he did not know. Defendant also stated the funds used to purchase the stock in question were derived from the sale of interests owned by him and his younger brother, Richard, in a corporation known as United Sash and Door Company. Upon liquidation of said company, defendant took the proceeds therefrom accruing to him and Richard and deposited same to appellant's account in Anderson-Dunham, Inc. When the opportunity arose to purchase shares in H. E. Allen, Inc. and Allen-Wallace Construction *910 Company, Inc., appellant withdrew from Anderson-Dunham, Inc., materials and supplies somewhat in excess of the aforesaid deposit in payment for the stock in dispute whereupon he and Richard became owners in equal proportions of a one-half interest in the two aforesaid corporations.
Richard E. Dunham testified he owns a one-quarter interest in both H. E. Allen, Inc. and Allen-Wallace Construction Company, Inc. While he was a minor serving in the armed forces, despite his minority, he together with his brother, Ted, and certain other parties held stock in a corporation known as United Sash and Door Company, which concern was liquidated. He and his brother, Ted, shared equally in the proceeds of the aforesaid liquidation and the funds derived therefrom were for convenience placed in Ted, Jr.'s account with Anderson-Dunham, Inc. He confirmed that his brother acted as his agent in the sale of the stock in United Sash and Door Company and the subsequent purchase of the stock in H. E. Allen, Inc. and Allen-Wallace Construction Company, Inc. Richard further testified that when he returned from military service, Ted, Jr. offered to give him his stock but he told Ted, "Well you go ahead and keep it in a safe place." At this time defendant placed the stock in the company safe to which both parties had access.
The senior Dunham had no interest in either corporation but possessed some knowledge of the attending circumstances. He corroborated the testimony of his sons in all principal aspects.
Plaintiff concedes Richard Dunham was part owner of United Sash and Door Company. She had no personal knowledge of said concern's affairs but is convinced Richard Dunham had no interest in the stock in question. Her position in this regard is predicated on information communicated to her by Mrs. Richard Dunham and Mrs. H. E. Allen, neither of whom testified as witnesses herein.
It is well established law in this state that fraud is never presumed and he who alleges fraud must prove it by clear and convincing evidence. Sanders v. Sanders, 222 La. 233, 62 So.2d 284, and cases therein cited.
As did our learned brother below we find appellant has failed to establish fraud to the degree of certainty required by law. We note no evidence, circumstantial or otherwise, to support such a serious accusation. We note further the transfers in question were made at an unsuspicious time and the events and circumstances surrounding the transactions were fully and adequately explained by the participants included among whom was a disinterested witness who had nothing to gain from the testimony given.
There remains the question of the validity of the mortgage executed by defendant in favor of his father in the sum of $61,000.00 covering the home occupied by plaintiff and defendant as their family residence, which said issue is involved in three of these consolidated causes.
During the marriage between plaintiff and defendant a lot was purchased in the name of defendant and a substantial residence constructed thereon. On December 27, 1957, shortly after the home was completed defendant executed a note in the sum of $61,000.00 to his father and secured same by granting a second mortgage on the family homestead, without appellant's knowledge or consent. Simply stated, appellant maintains the purported obligation is invalid in that it is a simulation given without consideration.
Counsel for appellant acknowledges the general rule which places the burden of proof upon the party advocating invalidity of an instrument for alleged failure of consideration. Counsel argues, however, that because of the close relationship between the parties concerned, that of father and son, the burden shifts to the participants to establish that consideration *911 was paid for the mortgage in question. While it is true that under certain circumstances the burden may shift to the parties urging validity of a transaction assailed for reputed failure of consideration, no such circumstances are shown in the case at bar. Dabezies v. Barthe, 104 La. 781, 29 So. 346, and Succession of Galiano, La.App., 195 So. 377, relied upon by appellant are inapposite. They involve instances wherein the burden was held to shift to proponents of a mortgage upon the showing the recited mortgagee was a person of too little means to have advanced the sum involved. Such is clearly not the case here.
Counsel for appellant also cites and relies upon Howard v. Howard, La.App., 96 So.2d 345; Agricultural Supply Co., Inc. v. Lavigne, 179 La. 1030, 155 So. 764, and Dorsey v. Ashford, La.App., 200 So. 176, as authority for the proposition that the close relationship of parties is a suspicious circumstance which is entitled to great weight and constitutes evidence of simulation thereby shifting the burden of proof to the principals to an allegedly simulated transaction.
The Howard case, supra, involved a conveyance from a married man to his sister, executed after notice of lis pendens was on record incident to an action by his wife to annul a judgment of divorce rendered in favor of her husband. In the cited case the transfer occurred at a suspicious time whereas in the instant matter the assailed transaction took place prior to appellant's institution of suit for separation. While relationship of parties is certainly a factor to be considered in actions involving alleged fraud, such circumstance per se neither establishes fraud nor shifts the burden of proof to the parties to the transaction. Our perusal of the Howard case, supra, discloses it merely holds close relationship of parties is a factor to be considered in actions alleging fraud or simulation but it does not hold such circumstance shifts the burden of proof to the parties advocating validity of the matter under attack. Neither do the Lavigne and Dorsey cases, supra, support the view advanced by learned counsel for appellant. We have considered said authorities and find that they merely apply the rule expressly prescribed in LSA-C.C. 2480, which squarely placed the burden upon the vendor remaining in possession of the object sold to establish the validity of such a transaction. The principle involved is clearly inapplicable to the instant case.
The senior Dunham testified his son gave him the note for $61,000.00 secured by mortgage on the son's home when the father paid the son's indebtedness in that amount owed Anderson-Dunham, Inc., a corporation wholly owned by the elder Dunhams. As hereinbefore shown, the younger Dunham drew upon Anderson-Dunham, Inc. for such amounts and purposes as he desired. Credits were entered when he made deposits of funds received from other sources or when he was given a bonus from corporation profits as also previously noted. His account, introduced in evidence, reveals a credit balance of $3,234.54 at the beginning of 1955. At the end of that year there was a debit balance of $11,335.39. By the end of 1956, the debit balance increased to $27,677.59, and at the close of the year 1957, it totalled $62,677.59. The rapid progression of the account in 1957 is attributed to the fact that during that year Ted, Jr. drew heavily upon the corporation for funds and materials used in the construction of what was undoubtedly an imposing home. The size of the son's unusually large debit alarmed the senior Dunham who demanded a mortgage on the son's home as security. The elder Dunham gave what we consider to be two perfectly logical and plausible reasons why he demanded payment of the amount owed the corporation by the son and security for his own funds which he loaned defendant to effect the amortization. He was concerned because the debit had advanced to such large proportions. He also explained that since the corporation was constantly borrowing large sums to conduct its various *912 enterprises, he did not wish the records to reflect such a large debit of an officer (Ted, Jr. being its Vice-President), as such circumstance would be looked upon with disfavor by prospective lenders. Payment of $61,000.00 owed the corporation by defendant was effected by a bookkeeping entry whereby the credit balance of the father in excess of $90,000.00 was charged with the sum of $61,000.00 which in turn was credited to the account of the son reducing the debit of the latter by that amount and leaving a debit of only $1,456.67.
The fact that Anderson-Dunham, Inc. may be considered the alter ego of Mr. Dunham, Sr. and the aforesaid accounting entries may on that account seem to lose some significance, is not a matter of particular concern. Assuming arguendo, the sum of $62,456.67 owed the corporation by young Dunham was in reality a debt owed the father, the note and mortgage would not thereby be invalidated because a pre-existing indebtedness is lawful consideration for both a promise to pay and a mortgage. Provost v. Harrison, 205 La. 21, 16 So.2d 892.
Appellant does not contest the validity, authenticity or correctness of the debit entries appearing on appellee's said account. Neither does she contend said debits do not truly represent withdrawals of cash or materials from the corporation by her former husband. She does contend, however, the materials furnished by the corporation for construction of the home were a donation or gift from defendant's parents. It is uncontradicted that the debit accumulated by defendant consists principally of cash and materials which were employed in constructing the home on which the mortgage was granted. In this connection George M. Hamilton, Jr., office manager of Anderson-Dunham, Inc., testified unequivocally that when these withdrawals were made defendant instructed him to charge them to defendant's personal account.
In support of her contention the materials for the home were a gift from defendant's parents, appellant established that her own parents donated the air-conditioning and heating system in the belief that the elder Dunhams were donating certain materials to a total of approximately $20,000.00 and they, plaintiff's parents, desired to do what they could. Appellant's mother, Mrs. Maizie Lou Bankhead, testified defendant told her his father was going to donate certain materials for the house. Mrs. Bankhead stated defendant's mother told her that she and Dunham, Senior were going to donate concrete, steel and other materials for the house. Plaintiff's mother acknowledged, however, that Mr. Dunham never discussed the matter with her.
The record, however, fails to disclose any express promise by either Mr. or Mrs. Dunham, Senior to furnish materials for the home as a gift. Both Mr. and Mrs. Dunham, Sr. stoutly deny any such promise or agreement and in this respect they are corroborated by defendant. While it may be that defendant's parents entertained some intention of making a donation at a future date and defendant may even have nurtured the hope of such eventuality, it nevertheless remains the record does not reflect that they did so.
The fact that the withdrawals were debited to appellee's account pursuant to his express instructions at a wholly unsuspicious time impels the conclusion that no definite agreement regarding a donation had been reached if one were contemplated. It is uncontradicted that the withdrawals in question were made by defendant on his own initiative without the express knowledge of his parents. He apparently made no effort to limit himself to the $20,000.00 which appellant's mother testified was to be a gift from his parents. If a donation were intended it could have been accomplished by the simple expedient of charging the cash and materials to the account of the elder Dunham or the granting of a company *913 bonus credited to defendant's account, neither of which was done.
LSA-C.C. Articles 1538 and 1539 provide that a donation of corporeal movables must be by authentic act provided that real delivery of the articles will suffice to complete the intended gift. In the instant case appellant has produced no authentic act and therefore must rely upon proof of delivery which she has not shown. The testimony of plaintiff and her mother respecting the statements of defendant and his mother at best show informal declarations of intent to furnish materials. Not only has plaintiff failed to establish that the alleged intent to donate was in fact carried out by delivery, but also the circumstances shown clearly preponderate in favor of the conclusion no donation was ever made.
It follows the note and the mortgage given in security therefor are valid and binding obligations of the community in question. Had the note not been executed the debt for which it was given would be a community liability subject to satisfaction from community assets. Appellant has no ground for complaining as to the method by which the debt was partially satisfied. The trial court correctly held the deficiency remaining after the sale of the home must be satisfied out of the mass of the community.
Finally, we note that the judgment rendered by the trial court in suit Number 6363 on the docket of this court (72,112 of the court below), rejected appellant's claim for $1,728.26 against the community. In so doing, our colleague fell into inadvertent error inasmuch as his written reasons for judgment appearing of record expressly recognize the validity of the claim which represents one-half the sum of $3,456.52 paid by appellant's father on appellant's behalf on the second mortgage held by defendant's father covering the home ultimately foreclosed upon. The indebtedness was a community obligation and as between defendant and plaintiff, defendant is liable for one-half thereof. Plaintiff is therefore entitled to credit in the sum of $1,728.26 against the community property remaining after satisfaction of all community obligations. Plaintiff is also entitled to judgment reserving her right to proceed against defendant individually for the sum of $1,728.26 or so much thereof as may remain unsatisfied from the mass of the community.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court shall be and the same is hereby amended and revised in that judgment is hereby rendered in favor of plaintiff, Billie Jean Bankhead Dunham, and against defendant, Ted F. Dunham, Jr., recognizing and declaring said plaintiff to be a creditor of the community of acquets and gains which existed between said parties, in the sum of $1,728.56 to be satisfied out of the community assets after all other community obligations are discharged.
It is further ordered, adjudged and decreed that in the event the community has not sufficient funds to satisfy the claim of appellant after payments of all other debts thereof, the right is reserved appellant to claim one-half of her said claim from appellee.
It is further ordered, adjudged and decreed that except as herein amended and revised the judgment of the trial court in suit Number 6363 on the docket of this Court shall be and the same is hereby affirmed. All costs of these consolidated causes shall be borne by the community of acquets and gains which existed between appellant and appellee.
Amended and rendered.