388 So.2d 1135 (1979)
Glynn W. REYNOLDS
v.
Margaret Susan Romero REYNOLDS.
No. 63936.
Supreme Court of Louisiana.
November 1, 1979.
On Rehearing September 3, 1980.
Dissenting Opinion October 6, 1980.
*1136 J. Minos Simon, J. Minos Simon, Ltd., Lafayette, for defendant-applicant.
Charles S. Weems, III, Gold, Little, Simon, Weems & Bruser, Alexandria, for plaintiff-respondent.
SUMMERS, Chief Justice.
Minnie Smith, widow of W. H. Sledge, executed her last will and testament on January 8, 1957. Her will created a spendthrift trust in which she bequeathed her farm consisting of 640 acres in Vermilion Parish, together with its improvements, to C. H. Brookshire as trustee. The will stipulated the trustee was to hold the property in trust for her grandchildren who survived her and until her youngest grandchild attained the age of twenty-one. The trustee was directed to hold, process, manage and control the trust estate with full power to alienate and encumber the trust estate.
At her death in 1959, Minnie Smith's will was probated and by a judgment in her succession on January 9, 1962 Brookshire was recognized as trustee under her will and, as legatee and trustee, recognized as "owner" and placed in possession of decedent's interest in the farm in Vermilion Parish. The judgement further decreed that the property be vested in the trustee and to continue until such time as the youngest of decedent's grandchildren shall attain the age of twenty-one years. The trustee was then to deliver the entire estate to the beneficiaries in equal proportions and in full ownership.
Thereafter, while the property was still held in trust, one of the grandchildren Margaret Susan Romero married Glynn W. Reynolds on July 9, 1966. During the existence of the marriage the wife received as distributed trust income the sum of $11,913.85. These funds were deposited in a checking account in the Kaplan State Bank under her exclusive control. At trial the parties stipulated that from this account the wife expended the sum of $9,660.26 on items of clothing for herself and the children and for household expenses. On February 6, 1970 Margaret and Glynn were judicially separated. Upon dissolution of the community a balance of $555.18 remained of this distributed trust income. And on February 6, 1970 when the community was dissolved there existed the sum of *1137 $11,434.80 in the account of the trustee, representing undistributed earnings of the trust estate in which Margaret owned an interest.
The wife did not execute and record an affidavit of paraphernality pursuant to Article 2386 of the Civil Code which provides:
"The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. The said instrument shall be executed before a Notary Public and two witnesses and duly recorded in the Conveyance Records of the Parish where the community is domiciled.
"If there is no community of gains, each party enjoys, as he chooses, that which comes to his hand; but the fruits and revenues which are existing at the dissolution of the marriage, belong to the owner of the things which produce them.
On July 5, 1971 the trust was terminated and the share of the trust property to which she was entitled was transferred by the trustee to Margaret Susan Romero. On August 21, 1972 the parties were divorced.
An agreement was entered into between the husband and wife on December 6, 1977 in which they settled the bulk of the community property. The only property, the status of which remained in dispute, was the $555.18 distributed to the wife by the trustee and the $11,434.80 in the account of the trustee representing undistributed earnings of the trust estate.
The wife contends that the distributed trust income and her proportionate share of the undistributed trust income constitutes her separate property. She asserts also that she is entitled to restitution of the $9,660.26 expended from those separate funds for the benefit of the community. It is the husband's position that the distributed and undistributed income constitute "fruits" of the paraphernal property of his former wife, which, because she did not execute and record the affidavit of paraphernality required by Article 2386 of the Civil Code, formed part of the community of acquets and gains which existed between them. Therefore, the husband contends that the wife's demand for restitution of the $9,660.26 should be rejected. He should be awarded, he asserts, judgment against his former wife for half of the distributed trust income on deposit at the time of the dissolution of the community, the sum of $277.59; and half of his former wife's proportionate share of the undistributed income amounting to $1,429.25 which he contended is also part of the community which existed between them.
The trial court decided that both the distributed and undistributed trust income belonged to the separate estate of the wife. The decision was based upon the theory that the fruits of the trust estate did not belong to the wife's separate estate because she was not the owner of the property which produced them. Instead, the court held, during the existence of the trust the corpus of the trust belonged to the trustee. The decision was based upon Section 1781 of Title 9 of the Revised Statutes to the effect that "[a] trustee is a person to whom title to the trust property is transferred to be administered by him as a fiduciary." (emphasis added).
Although concluding that the distributed income was the separate property of the wife, the trial judge denied her claim for restitution. He was of the opinion that that expenditure was free and voluntary and that money was apparently spent for gifts and contributions without any expectation of anything in return. There was no proof, he held, that those expenditures enhanced the community.
On appeal to the Third Circuit the wife complained that she was improperly denied restitution of the funds she alleged she expended for the community. The husband answered contending that the trial court *1138 erroneously denied his claim that the funds at issue were community property.
The Third Circuit reasoned that "on the date of their marriage the wife, as a beneficiary under the trust, was vested with an interest in the corpus of the trust, which interest formed part of her separate estate. Therefore, not having executed and recorded the declaration of paraphernality required by Article 2386, the fruits of her separate estate fell into the community of acquets and gains. These fruits were the distributed income.
The Court of Appeal also decided that the undistributed income as well was "fruits" of her separate property and for the same reason fell into the community.
In arriving at this result the Court of Appeal rejected the trial court's holding that the trustee was the owner of the trust corpus during the existence of the community between the parties and therefore the fruits of the property held in trust did not fall into the community. The appellate court was of the opinion that the wife as beneficiary of the trust was the owner of the corpus of the trust, compelling the conclusion that the fruits of that separate property inherited from her grandmother fell into the community because of the wife's failure to execute the affidavit of paraphernality.
It was primarily to settle these issues and reconcile the decision of United States v. Burglass, 172 F.2d 960 (5th Cir. 1949) with the decision in Dunham v. Dunham, 174 So.2d 898 (La.App.1965) that we granted this writ on the wife's application. 365 So.2d 530 (La.App.).
"A trustee is a person to whom title to the trust property is transferred to be administered by him as fiduciary." (emphasis added). La.Rev.Stat. 9:1781.
That the title transferred to the trustee in the case at bar was intended to vest ownership in the trustee is made manifest by the meaning of the word "title". Perhaps the most common use of the word in the law is in the sense of ownership of property. 86 C.J.S., Title p. 907. It is therefore contrary to well accepted principles of statutory construction to disregard the clear meaning and letter of the statute under the pretext of pursuing its spirit. La.Civil Code art. 13. Words of a law are generally to be understood in their most usual signification. La.Civil Code art. 14. When ownership is vested in the trustee with full powers as such it cannot be said that the beneficiary of the trust then has rights in the property which entitle her to its fruits unless, as in this case, the trustee willed it so. "The ownership of a thing is vested in him who has the immediate dominion over it, and not in him who has a mere beneficiary right in it." La.Civil Code art. 489.
Act 180 of 1979 to become effective January 1, 1980, enacts Article 477 of the Civil Code to explicitly embody in its provisions principles which have heretofore been part of our Civil Code by implication. See Articles 488 and 491. The new article provides:
"Ownership is the right that confers on a person direct, immediate and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law." See also 3 Planiol et Ripert, Traite pratique de droit civil francais 220 (2d ed. Picard, 1972).
No statute in Louisiana confers upon a trust beneficiary the ownership of the corpus of the trust; the interest of the beneficiary referred to in Sections 1971 and 1972 of Title 9 of the Revised Statutes is an interest in the trust, not in the corpus. Likewise, no Louisiana case (Succession of Stewart, 301 So.2d 872 [La.1974] and St. Charles Land Trust v. St. Amant, 217 So.2d 385 [La.1969], in particular) confers upon the beneficiary a right of ownership in the corpus of the trust.
There are other factors which persuade us to conclude that the trustee acquired and exercised ownership of the corpus of the trust during the tenure of the trust. The very language of the trust instrument is explicit in this respect. When the testator gave the property to the trustee "to have and to hold" she transferred ownership to the trustee *1139 "[t]o hold, possess, manage, [and] control the said trust estate and every part thereof, with full power to lease for a period which may extend beyond the terms of the trust, and to sell, transfer, convey, and dispose of the said property, upon such terms and in such manner and for such prices as the trustee shall deem reasonable and proper."
While this ownership remained in the trustee the fruits of the property could not fall into the community between the beneficiary wife and her husband. Dunham v. Dunham, 174 So.2d 898 (La.App.1965).
The beneficiary of this trust had no right to administer the trust property; the full authority in that respect was vested in the trustee. As beneficiary she could not sell, mortgage, lease or otherwise alienate or encumber the trust property. She was without even the slightest indicia of ownership so long as the trust endured. She could not demand any action on the part of the trustee, not even the trust income or the monies which the trustee chose to deposit in her bank account. The discretion granted the trustee in this regard was "absolute and not subject to be questioned by any of the beneficiaries of the trust."
Thus the funds transferred to the wife as beneficiary of the trust prior to the dissolution of her marriage were not the fruits of her property. The funds were, instead, "property" which she received from the income of the trust corpus owned by the trustee. If however, these funds, once transferred to the wife's account, had produced revenues in the form of interest or otherwise, that interest would have become "fruit" of her separate property and as such would fall into the community existing between the parties. But there is no evidence that these funds produced interest or other income subject to classification as community property. Therefore the failure of the wife to execute the affidavit of paraphernality had no effect on this property for it had produced no fruits. To the contrary she utilized these funds to purchase gifts for her family and for herself.
For the reasons assigned by the trial judge we are also of the opinion that the wife is not entitled to be reimbursed for the funds she claims she spent for the benefit of the community from the distributed trust revenues.
This same result, although somewhat differently postured factually, pertains to the undistributed trust revenues. Only the trustee had the right to order these revenues paid to the grandchildren beneficiaries and then for the purpose of their maintenance and education in his discretion during the existence of the trust. So long as the trustee retained them, they remained the property of the trust. Dunham v. Dunham, supra.
The settlor of the trust plainly did not intend that the beneficiaries of the trust acquire administration or control of the corpus or undistributed revenues of the trust until the trust was terminated. At that time the corpus of the trust and its remaining revenues were to be delivered to her grandchildren, the beneficiaries. Until that time the beneficiaries could not invoke Article 2386 with respect to property and its revenues owned by the trustee.
These reasons result in this Court's approval of Dunham v. Dunham, supra, and our decision not to consider United States v. Burglass, 172 F.2d 960 (5th Cir. 1939) authoritative in Louisiana State courts.
The other issues resolved by the trial judge are approved.
For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside, and the judgment of the trial court is reinstated and made the judgment of the court.
MARCUS, J., dissents, being of the opinion that the judgment of the court of appeal is correct.
DENNIS, J., dissents and assigns reasons.
BLANCHE, J., dissents, being of the opinion that the judgment of the court of appeal is correct.
*1140 DENNIS, Justice, dissenting.
I respectfully dissent.
After reviewing the record and the law in this case, I conclude that the court of appeal was correct in its judgment: both the distributed and undistributed funds from the trust income represent fruits of Mrs. Reynolds' separate property interest in the Minnie Smith Sledge Trust. Since Mrs. Reynolds failed to file an affidavit pursuant to Civil Code article 2386, this income fell into the community of gains.
Title to trust property is vested in the trustee so that he may administer the property as a fiduciary for the benefit of the principal and income beneficiaries. La.R.S. 9:1731, 1781; St. Charles Land Trust v. St. Amant, 253 La. 243, 217 So.2d 385 (1969). Under the Louisiana trust law in effect at the time the Sledge trust was created, the same principle existed. See former La.R.S. 9:1792(16) and 9:1811. The trustee's position as a title holder differs significantly from that of an ordinary owner of property, because the trustee holds title solely for the benefit of the beneficiaries under the terms of the trust. La.R.S. 9:2082; see former La. 9:1962(2); L. Oppenheim, 2 Civil Law Treatise-Trusts § 131. In fact, a trustee does not receive title to trust property as "owner" but rather as a fiduciary with exclusive powers of management and control over the property. Succession of Stewart, 301 So.2d 872 (La.1974).
Although the trustee has legal title to the trust corpus in his capacity as trustee, the principal beneficiary also has an interest in the corpus sufficient to constitute a form of ownership. This variety of ownership is peculiar to the law of trusts, a creation of the common law adopted by Louisiana in its Trusts Estates Law and its Trust Code. Such ownership does not mix easily with the Louisiana Civil Code concepts of ownership. Under the Civil Code article 488 ownership is the right by which a thing belongs to someone in particular, to the exclusion of all other persons. The ownership of a thing is vested in him who has the immediate dominion of it and not in him who has only a beneficial interest in the thing. However, the law of trusts recognizes a vesting of a beneficial interest in the principal beneficiary at the creation of a trust and a further vesting of this interest in the heirs of the principal beneficiary at his death. La. R.S. 9:1971, 1972; former 9:1921. In St. Charles Land Trust and Succession of Stewart, supra, this Court recognized that a principal beneficiary has a property interest in the trust corpus in the nature of a beneficial right to the trust property, and this interest is taxable and heritable. Furthermore, a beneficiary may transfer his interest unless the trust instrument precludes or limits alienation. La.R.S. 9:2001, 2002.
Mrs. Reynolds, as the principal beneficiary of the Sledge trust, had a property interest in the corpus, the rice farm, and this interest constituted her separate property. Civil Code article 2334. The income arising out of farming operations and oil and gas leases on the farm represents fruits of her separate property. La.C.C. art. 2386. As such, under the literal wording of article 2386, these fruits are community property, because Mrs. Reynolds failed to file an affidavit declaring her intention to administer for her separate use and benefit the trust property.
Counsel for the defendant argues in his brief that if the trust income is considered fruits under article 2386, the wife need not have executed the affidavit because the trustee had exclusive administration of the property and thus it would be absurd to require Mrs. Reynolds to execute a declaration that she intended to administer her separate property. While it is correct that article 2386 requires an affidavit declaring a wife's "intention to administer such property separately and alone," I do not consider the article to be concerned with who in fact administers the property. I conclude that the article provides a substantive and exclusive means by which a wife may preserve the fruits of her separate property for her own benefit and that under the article the administration of the property in fact is irrelevant.
Prior to 1944 the Civil Code in article 2386 provided that the fruits of the wife's *1141 paraphernal property fell into the community of gains when the property was managed by the husband or by the wife and him "indifferently." If neither was the situation, then the fruits remained the wife's separate estate. There developed cases in which the wife proved that the husband who had administration in fact was merely an "agent" of the wife. See Miller v. Handy, 33 La.Ann. 160 (1881); Paul v. Arnoult, 164 La. 841, 114 So. 706 (1927). Apparently in response to this line of jurisprudence which was beset with problems of proof in relation to the administration of the wife's separate property, the legislature in 1944 amended Civil Code article 2386. As amended and as it now stands, article 2386 provides that the fruits of the wife's paraphernal property, however administered, fall into the community unless the wife executes a notarial act declaring her intention to administer the property for her separate use. C. Morrow, Matrimonial Property Law in Louisiana, 34 Tul.L.Rev. 1, 13 (1960).
The situation of a trust in which the trustee has sole power of administration was not contemplated by the legislature in 1944. However, I conclude that article 2386 admits of no proof on the issue of administration, for to conclude otherwise would be to ignore the plain wording of the first clause of article 2386 which states that the fruits are community regardless of administration.
The court of appeal below determined that without the affidavit the husband is considered to have the administration and enjoyment of the wife's separate property. Reynolds v. Reynolds, 365 So.2d 530, 537 (La.App. 3d Cir. 1978); following Guillot v. Guillot, 361 So.2d 1271 (La.App. 3d Cir. 1978); see also La.C.C. art. 2385. I do not think it necessary to engage this conclusive presumption in order to reach the same result. I would hold that article 2386 is dispositive of the status of the fruits of the wife's separate property, and such fruits fall into the community of gains however administered unless the wife executes the affidavit.
For the foregoing reasons I respectfully dissent from the majority opinion.

ON REHEARING
WATSON, Justice.[*]
This is a dispute between two former spouses over income from a trust. This court originally held that the trustee owned the corpus of the trust; that the wife's beneficial interest did not have the indicia of ownership; therefore, that the income from the trust was not a fruit of the wife's separate property and did not fall into the community; that both the distributed and undistributed trust income was the wife's separate property; and that the wife was not entitled to reimbursement of the funds expended from the distributed trust income because there was no enhancement of the community.
A rehearing was granted to reconsider the status of the trust income and the wife's right to reimbursement.
The beneficiary wife is Margaret Susan Romero Reynolds. The trust was established in the will of her grandmother, Minnie Smith Sledge. A farm was placed in trust for the benefit of Ms. Sledge's grandchildren, present and future. Ownership of the property was transferred to the trustee, who had authority to sell or otherwise dispose of the property as he saw fit. The time and amount of disbursements to the beneficiaries for their support were at his discretion.
The beneficial interest of Ms. Reynolds in the trust is clearly less than full ownership. LSA-C.C. art. 477[1] and former art. 489.[2] *1142 Title to the property vested in the trustee. LSA-R.S. 9:1731.[3] The undistributed income from the trust was under the control and dominion of the trustee. It accrued to the trustee during the term of the trust, as a civil fruit unseparated from the corpus of the trust. LSA-C.C. art. 489[4] and former art. 499.[5] Ms. Reynolds had no right to this money until the trustee decided to distribute it. The undistributed income did not fall into the community.
Although Margaret Susan Romero Reynolds did not own the corpus of the trust, her paraphernal estate included a beneficial interest, an incorporeal right. LSA-C.C. art. 461[6] and former art. 460.[7] The distributed revenues from that incorporeal right were civil fruits. LSA-C.C. art. 551[8] and former art. 545.[9] See the definitive discussion by Professor A. N. Yiannopoulos, 2 La.Civ.Law Treat.2d, § 25 and § 26. Once distributed, the wife had full ownership of this income. These fruits of the wife's paraphernal property fell into the community because no instrument was filed to reserve them for the wife. LSA-C.C. art. 2386[10] and the *1143 successor article, LSA-C.C. art. 2339.[11]
Since the wife kept the distributed fruits under her control in a separate checking account, they were not delivered to the community for its use. She has no right to restitution of the income from the trust which she spent during the marriage. The funds were expended prior to the effective date of the new Matrimonial Regimes legislation, January 1, 1980, and the matter is governed by former Civil Code articles, 2388,[12] 2390,[13] and 2391.[14]Slater v. Culpepper, 233 La. 1071, 99 So.2d 348 (1957). The test is not enhancement or benefit to the community. Under the prior law, only the husband, who manages the community assets, is required to show an enhancement of the community to obtain restitution of his separate funds. The wife must only show delivery to the community for its use. The wife did not meet that burden here, and her claim must be denied.
Therefore, the original opinion correctly held that: (1) the undistributed trust income of $11,434.80 did not fall into the community; and (2) the wife had no right to reimbursement of the funds she expended. However, the opinion erred in holding that the balance of the distributed income was not a civil fruit of the wife's paraphernal property. The $555.18 balance of the distributed trust income is a community asset.
Therefore, the original opinion is amended as to the trust income distributed during the existence of the community, to declare the sum of $555.18 to be a community asset.
DIXON, C. J., dissents in part and concurs in part with reasons.
CALOGERO, J., dissents in part and concurs in part for reasons assigned by DIXON, C. J.
MARCUS, J., concurs in part and dissents in part and assigns reasons.
DENNIS, J., concurs in part and dissents in part for reasons.
*1144 BLANCHE, J., dissents, being of the opinion that the judgment of the Court of Appeal is correct.
DIXON, Chief Justice (dissenting in part and concurring in part).
Rehearing was granted in this case in order to clarify the issue which is crucial to our determination of whether the funds disbursed to Mrs. Reynolds in accordance with her grandmother's testamentary trust were separate property or community property: the nature of her interests in the trust.
Our original opinion held that because ownership of the trust corpus was vested in the trustee, income derived from that corpus could not be considered a fruit of the beneficiary's separate property. The dissent concluded, on the other hand, that Mrs. Reynolds' beneficial interest in the trust corpus constituted a property interest sufficient to make the corpus her separate property, so that income produced by the corpus was a fruit of her separate property. An amicus brief submitted in support of the application for rehearing buttresses the dissent's viewpoint by interpreting the trustee's title to trust property as a mere "fiduciary title," similar to the power to manage property for the benefit of others vested in curators, tutors and administrators of successions, and insufficient to deprive the beneficiary of actual ownership of the trust corpus.
These analyses are less than satisfactory because they fail to recognize that the formation of a trust may create two separate and independent beneficial interests, not merely one single interest which produces "fruits." All of the interpretations advanced thus far have assumed that a beneficiary has only one interest, an interest in the corpus, and that the income produced by the corpus is distributed to the beneficiary as the fruit of that interest or of the trust corpus. The sole point of disagreement has been whether that beneficial interest can be characterized as ownership of the trust corpus.
Actually, however, the Louisiana Trust Code makes it clear that two separate interests are involved: a right to receive some or all of the income produced by the corpus, in accordance with conditions provided by the trust instrument, and a right to receive the corpus itself, as owner, at a future time, also as provided by the terms of the trust. The Trust Code defines these interests by characterizing the holder of one type as an income beneficiary, the holder of the other type as a principal beneficiary.[1] The code also provides that these interests may be held concurrently by a single beneficiary or allocated separately to different beneficiaries.[2] The independent nature of the two *1145 interests is most apparent when they are held by different beneficiaries, as is the case under many trust agreements. Bogert and Bogert, Law of Trusts, Fifth Edition, 405 (1973). Because the interests may be in conflict, especially in this situation, the Louisiana Trust Code (R.S. 9:2141-2156) and the Restatement Second of Trusts (§§ 232-241) provide specific rules for the allocation by the trustee of receipts and expenses to principal or income, in conformity with his duty to act impartially.
That these interests retain their independent and separate nature even when both are held by one beneficiary is seen most clearly when the law requires or permits the interests to be treated differently. In many jurisdictions, for instance, a beneficiary's interest in the corpus of a trust is treated differently from his interest in income, with regard to creditors' rights to seizure. See R.S. 9:2004, 9:2005; Annotation, Trust Income or Assets as Subject to Claim Against Beneficiary for Alimony, Maintenance, or Child Support, 91 A.L.R.2d 262 (1963); Shelley v. Shelley, 223 Or. 328, 354 P.2d 282 (1960). Similarly, these interests are distinguished under provisions of the federal gift tax, 26 U.S.C. § 2501 et seq., which excludes future interests in property from the definition of taxable gifts, but not present interests which may be diminished by the exercise of a power of another. In Herrmann's Estate v. Commissioner of Internal Revenue, 235 F.2d 440, 443 (5th Cir.1956), the United States Fifth Circuit Court of Appeals stated:
"The disposal of property in trust under an agreement deferring distribution of principal may be regarded for Federal gift tax purposes as a two-fold transfer creating one interest in the income and another in the principal. ..."
See also Commissioner of Internal Revenue v. Thebaut, 361 F.2d 428 (Fifth Cir.1966); Commissioner of Internal Revenue v. Herr, 303 F.2d 780 (Third Cir.1962).
In order adequately to determine the nature of the funds received by Mrs. Reynolds from the trustee, it is therefore necessary that we examine both of the interests conferred upon her by the terms of her grandmother's will. It is significant that the will does not explicitly invest her, as a trust beneficiary, with any rights. Instead, her rights, or interests, exist only as implied correlatives to the duties imposed upon the trustee, to whom title to the trust property was conveyed.
The nature of Mrs. Reynolds' interest in income may be inferred from the following provisions:
"(a) During the duration of the trust hereinabove created, the Trustee shall pay to the beneficiaries, who are my grandchildren, those presently living being Margaret Susan Romero, Alton Romero, Jr. and Ignance Joseph Romero, monthly, or at such periodic intervals as the Trustee may determine best in his discretion, such sums as may be necessary to permit the beneficiaries to properly maintain themselves and care for all of their needs, including those ordinary and usual luxuries which the Trustee, in his discretion, may deem reasonable and proper, and in order to provide for their proper education, and in order to insure the maintenance of their customary and usual standard of living. The amount to be paid to the beneficiaries shall, as far as possible, be paid from the income derived from the property placed in trust, provided, however, that in the event the net income is at any time insufficient, in the opinion of the Trustee, to provide for the support, comfort, maintenance and general welfare of the beneficiaries, then the Trustee shall pay to or spend, for the benefit of such beneficiary or beneficiaries, such sum from the principal of the property held in trust, as, in the sole discretion of the Trustee, may be necessary or desirable for such purpose, and the discretion given to the Trustee shall be absolute and not subject to be questioned by any of the beneficiaries of the trust. The Trustee shall have full authority to sell and dispose of any and all property, real and personal, by any title *1146 whatsoever and for such consideration as he deems proper in his sole discretion.
. . . . .
(1) The interest of the beneficiary hereunder, either as to income or principal shall not be anticipated or alienated (either voluntarily or involuntarily), nor in any other manner be assigned by the beneficiary, and shall not be subject to execution or seizure or any other legal process or bankruptcy proceedings or interference or control by creditors or others, except as is provided under R.S. 9:1923 and the laws of the State of Louisiana."
Mrs. Reynolds' interest thus consisted of the right to receive such amounts as the trustee determined to be necessary for her proper maintenance, at intervals to be determined by the trustee. These disbursements were to be made by the trustee from funds accruing to the trust as income and, if judged necessary by the trustee, from the trust corpus itself. It is important to note that the income derived from the trust property, or its fruits, was received and entirely controlled by the trustee, subject only to his duty to provide for each beneficiary's support. Mrs. Reynolds, on the other hand, had no right to these funds, only a right to sums necessary for her support. This kind of interest may be viewed as an annuity or an alimentary pension rather than as a usufruct or a right to fruits. Oppenheim, A New Trust Code for Louisiana, 23 La.L.Rev. 621, 627 (1963). It is also significant that Mrs. Reynolds had no power to anticipate or alienate this interest except to the extent that it was made available to her creditors by statute.
Mrs. Reynolds' interest in the corpus of the trust is derived from the following rights conveyed to the trustee and duties imposed upon him:
"1. I give and bequeath my farm property comprising six hundred and forty (640) acres, more or less, situated in the Parish of Vermilion, Louisiana, together with all improvements, equipment, farm implements and movable property situated thereon, unto C. H. Brookshire, a resident of the Parish of Vermilion, Louisiana, Trustee, to have and to hold all of the said property in trust for my grandchildren, the children of Willie Mamye Sledge Romero, who may be living at the time of my death, the beneficiaries, said beneficiaries to share and participate in the said property pursuant to this trust in equal proportions. The said trust shall continue until such time as the youngest of the said grandchildren living at the time of my death shall attain the age of twenty-one (21) years, at which time the trustee shall render a final accounting to the said grandchildren and deliver the entire trust estate unto the said beneficiaries in equal proportions and in full ownership. In the event any one of the grandchildren living at the time of my death dies before attaining the age of twenty-one (21) years, the interest in the said property inherited by the said child pursuant to this will, shall be inherited by the heirs and legal representatives of the said grandchild, and this trust shall terminate at such time as the youngest living grandchild reaches the age of twenty-one (21) years.
. . . . .
(2) The Trustee shall hold and manage the property herein conveyed, together with such other property as may be acquired during the existence of this trust, all of which said property will hereafter be referred to as the "Trust Estate" upon the terms and conditions and for the uses and purposes and with the duties and powers vested in him, which said powers are specifically referred to as follows:
(a) To hold, possess, manage, control the said trust estate and every part thereof, with full power to lease for a period which may extend beyond the terms of the trust, and to sell, transfer, convey and dispose of the said property, upon such terms and in such manner and for such prices as the Trustee shall deem reasonable and proper.
(b) The Trustee, in addition to and not in limitation of the statutory authority, is hereby given full power and authority to *1147 invest and reinvest all or any part of the said trust estate which may come into his hands in such a manner and in such securities or other property, personal or real, and upon such terms and for such length of time, as the Trustee shall deem reasonable and proper, it being intended hereby to give unto the Trustee full and complete authority to hold, possess, manage, control, sell, convey, encumber, lease, invest and reinvest, the whole and every part of the said trust estate according to his sole judgment and discretion."
It is apparent that the only interest bequeathed to Mrs. Reynolds was the right to receive a portion of the trust corpus at some time in the future. It should be noted that not only was the time at which this right could be exercised made indefinite by the terms of the will (dependent upon the possible birth of additional grandchildren before the testator's death and the possible deaths of the grandchildren before the age of twenty-one) but that the amount of the property to be received was also indefinite. That is, the percentage of the total corpus she could ultimately receive was dependent upon the number of grandchildren living at the time of the testator's death, while the nature and value of the corpus itself were dependent upon the manner in which the trustee exercised his powers to manage, lease, sell and encumber the trust property, to invest and reinvest, and to make payments of principal to the various beneficiaries in accordance with their needs. It is conceivable that there might be no trust property upon which Mrs. Reynolds could exercise her right to delivery at the termination of the trust. It is because of the indeterminate nature of the interest in principal (and also in income, under the terms of this trust agreement) that "eventual interests in trusts usually are not readily assignable." Pascal, Of Trusts, Human Dignity, Legal Science, and Taxes, 23 La.L. Rev. 639, 649-650 (1963). It should be noted that under this agreement Mrs. Reynolds had no right to assign, alienate or anticipate her interest in the corpus, as she also had no right to do with her interest in income.
It is unreasonable to characterize Mrs. Reynolds' right to receive an indefinite amount of property at an undetermined future date as an interest which constitutes ownership of property under the principles of this state's property law, as embodied in C.C. 477, 1979 revision, and former C.C. 489. Article 489 provided:
"The ownership of a thing is vested in him who has the immediate dominion of it, and not in him who has a mere beneficiary right in it."
Article 477 now provides:
"Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law."
It is obvious that Mrs. Reynolds' future and indefinite right is devoid of the indispensable elements of ownership: immediacy, dominion, and authority. It is argued that these elements are also absent in situations of curatorship, tutorship and the administration of successions, but that interdicts, minors and heirs are nonetheless "owners" of their property. In common law jurisdictions, the relationship established by a trust is distinguished from the relationship involved in situations like curatorship through the concept of title: a curator has possession and powers of disposition, but the title to the property remains in the ward, so that the curator may be likened to the ward's court appointed agent. Bogert and Bogert, Law of Trusts, 37 (1973); Restatement Second of Trusts, 22-23 (1959). The concept of title also forms an integral part of Louisiana trust law. R.S. 9:1811 of the Trust Estates Act stated that a trust was created when legal title was transferred to a trustee; R.S. 9:1731 now provides that a trust is the relationship resulting from the transfer of title to property to a trustee. One writer has indicated that "Louisiana has gone the full way and adopted the common law trust with no local trappings, no subterfuges, or restrictions that cut the ground from under the trustee as holder of the legal title." Wisdom, A *1148 Trust Code in the Civil Law, 13 Tul.L.Rev. 70, 83 (1938). The answer is not found in analogy; it is found in the Louisiana concept of ownership.
The rights granted to the trustee by the settlor constitute ownership under our law.[3] Under prior article 490 the trustee's ownership would be characterized as an imperfect ownership, because it was to terminate on a condition (the youngest beneficiary's attainment of the age of twenty-one). The 1979 revision abandoned the distinction between perfect and imperfect ownership. Instead, article 478 now provides that "[t]he right of ownership may be subject to a resolutory condition," and the Comment to that article states that the new provision does not change the law. Regarding imperfect ownership, prior article 492 provided:
"Imperfect ownership only gives the right of enjoying and disposing of property, when it can be done without injuring the rights of others; that is, of those who may have real or other rights to exercise upon the same property."
Present Article 477, supra, similarly authorizes the restriction of an owner's rights "within the limits and under the conditions established by law"here the duties imposed upon a trustee by the Louisiana Trust Code.
We therefore should find that Mrs. Reynolds' interest in the corpus of the trust did not constitute an "ownership" of separate property which could produce either income payments or undistributed income as "fruits."[4] Instead, the trust agreement conferred upon her, as a donation mortis causa, an independent interest in receiving those funds; the income is hers by virtue of the donation mortis causa, and therefore her separate property. Her husband's claim to these funds was properly denied.
In his dissent to our original opinion in this case, Justice Dennis concluded that the trust dividends distributed to the income beneficiary were fruits of her paraphernal *1149 property, because she had an "interest in the corpus sufficient to constitute a form of ownership." Recognizing that such "ownership" is incompatible with the concepts of ownership in the Louisiana Civil Code, the dissent finds an intent to create a different kind of ownership in the trust code.
Principles established in the Civil Code are designed to function in an entire system of laws in this state. When the principle is clear, concise, broad and universally understood and accepted, it should not be deemed changed or abandoned by inference. If subsequent legislation clearly indicates that our former concept of ownership is hereafter changed or modified in some respect, the change should be accepted. Further, if the legislature establishes a relationship between persons and property that cannot function, or will be hampered and impeded in its operation by adhering to the established concept of ownership, then, and only then, would we be justified in finding an inference that the legislature intended to change the law of ownership.
Here there is neither statutory provision changing the meaning of ownership, nor conceptual hiatus requiring us to find an inference of intent to change it, in order to permit the legislative scheme to function. The trust is permitted by the Constitution (Article 12, § 5) and the statutory scheme is as complete as it need be. Absolutely no impediment to the function of the trust will occur by the application of the accepted Civil Code concept of ownership. The unknown factor in this case would be the effect of holding that the income beneficiary and the trustee both have ownership interests in the property constituting the corpus.
The statutes do not say whether the trustee or the beneficiary is the owner of the corpus. The trustee has title. R.S. 9:1731 contains no inference that the beneficiary is the owner:
"A trust, as the term is used in this Code, is the relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another."
Section 1731 fixes the relationship of the trustee as a fiduciary to administer the corpus for the benefit of another. The will gave him all the powers of ownership. Ownership powers in the trustee are not essential for the validity or utility of a trust, but this trustee is the owner. R.S. 9:1781 repeats:
"A trustee is a person to whom title to the trust property is transferred to be administered by him as a fiduciary."
Section 1781 does not say or imply that the trustee does not or cannot be the owner, subject to a resolutory condition, or otherwise.
The Succession of Stewart, 301 So.2d 872 (La. 1974), mentioned in the dissent referred to, did not decide, because it was not an issue, whether the income beneficiaries had an ownership interest in the corpus. The trust instrument was different. It did not, by its terms, convey the powers of ownership to the trustees, and, to the contrary, required that the trustees "retain the real estate intact" insofar as possible. 301 So.2d at 874. The trustees were to administer the property for the benefit of the settlor's nieces and nephews. The settlor intended that the bulk of his estate be distributed before the termination of the trust, the object of which was thus stated: "`... my intention in creating it is to provide for my family, subject to the discretion of said Trustees, as I am confident the Trustees can increase said estate.'" 301 So.2d at 875. If the trust was valid, as the majority held, then "[T]he trust was created with the immediate vesting of interest in the beneficiaries at the moment of the settlor's death." 301 So.2d at 883. Of course the beneficiaries had an interest, which arose at the time of the death of the settlor; but they did not own, and we did not hold that they owned, the corpus or the property composing the corpus.
It is clear, therefore, that the undistributed trust income, not yet the property of the beneficiary, did not fall in the community.
The distributed income, in my view, was not the "fruit" of the beneficiary's separate *1150 property, but was the materialization of the gift of a future interest in property. It was, itself, a gift from the settlor, and not the produce of the beneficiary's separate property.
With regard to Mrs. Reynolds' claim for reimbursement of the amounts of this separate property she expended for herself, the children, and household expenses, the trial court found that these were gifts freely made without any expectation of return, and that she had failed to prove a resulting enhancement of the community. The conditions under which a wife may be reimbursed for the expenditure of her separate property have often been described in this state's jurisprudence. In Slater v. Culpepper, on rehearing, 233 La. 1071, 1102-1103, 99 So.2d 348, 360 (1957), this court stated:
"... Under our law the wife, unlike the husband, has the absolute right to restitution for her paraphernal effects and their fruits, either delivered to her husband or delivered for use to the community, save in instances governed by Article 2389 of the Civil Code, which is not applicable here. In the case of the husband, it is incumbent upon him to establish that his separate property has been employed to enhance the community at its dissolution. Munchow v. Munchow, 136 La. 753, 67 So. 819; Vicknair v. Terracina, 168 La. 417, 122 So. 276; Succession of Provost, 190 La. 30, 181 So. 802 and Abunza v. Olivier, 230 La. 445, 88 So.2d 815...." (Emphasis added).
In all subsequent cases, the courts have agreed that enhancement of the community must be shown only by a husband who seeks restitution of his separate property, because of his exclusive authority to manage the community, and not by a wife. The trial court erred, therefore, in imposing this requirement upon Mrs. Reynolds. The courts have disagreed, however, as to whether or not a wife must show delivery of her separate funds to her husband or (delivery) for use to the community, a requirement specified in Slater. A showing of delivery was required in Foster v. Foster, 330 So.2d 638 (La.App. 4th Cir. 1976); Guilott v. Guilott, 326 So.2d 551 (La.App. 3rd Cir. 1976), stating explicitly that delivery is a prerequisite to restitution; Emerson v. Emerson, 322 So.2d 347 (La.App. 2d Cir. 1975); Troxler v. Cubbage, 235 So.2d 170 (La.App. 4th Cir. 1970); Succession of Smith, 232 So.2d 569 (La.App. 4th Cir. 1970), also requiring that a wife abandon control of her separate property; and Broyles v. Broyles, 215 So.2d 526 (La.App. 1st Cir. 1968). On the other hand, in two cases, Succession of Slavich, 232 So.2d 846 (La.App. 4th Cir. 1970) and Gouaux v. Gouaux, 211 So.2d 97 (La.App. 1st Cir. 1968), the appellate courts found that a wife must show either that the funds were delivered to her husband or that they were expended for the benefit of the community. These two cases make a showing of benefit to the community an alternative to a showing of delivery, perhaps on the basis of a misreading of the language of Slater. Whatever its genesis, this interpretation should be abandoned as inconsistent with the principles of community property law[5] and in conflict with the line of cases following Slater.
The expenditures voluntarily made by Mrs. Reynolds from her separate checking account for family and household expenses do not contain the element of delivery to the community, for its use, which is a prerequisite to a wife's claim for reimbursement of her separate property. I agree with the conclusion of the majority that this claim should be denied.
I therefore concur in the conclusion of the majority that the undistributed trust income did not fall into the community, and dissent from the holding that the distributed trust income was a community asset.
MARCUS, Justice (concurring in part and dissenting in part).
In my view, both the distributed and undistributed revenues from the trust fall into *1151 the community in absence of the wife complying with La.Civ. Code art. 2386. I agree with the judgment of the court of appeal. Accordingly, I respectfully concur in part and dissent in part.
DENNIS, Justice, concurring in part and dissenting in part.
For the reasons I assigned in my dissent on original hearing, I believe both the distributed and undistributed revenues from the trust fell into the community in the absence of a reservation pursuant to Article 2386. Accordingly, I respectfully concur in part and dissent in part.
NOTES
[*] Honorable Edward A. de la Houssaye, III participated in this decision as Associate Justice Ad Hoc.
[1] LSA-C.C. art. 477 provides:

"Ownership; content. Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law." (Acts 1979, No. 180, § 1, eff. Jan. 1, 1980).
[2] LSA-C.C. art. 489 (repealed) provided:

"The ownership of a thing is vested in him who has the immediate dominion of it, and not in him who has a mere beneficiary right in it."
[3] LSA-R.S. 9:1731 provides:

"A trust, as the term is used in this Code, is the relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another."
[4] LSA-C.C. art. 489 provides:

"Apportionment of fruits. In the absence of other provisions, one who is entitled to the fruits of a thing from a certain time or up to a certain time acquires the ownership of natural fruits gathered during the existence of his right, and a part of the civil fruits proportionate to the duration of his right." (Acts 1979, No. 180, § 1, eff. Jan. 1, 1980).
[5] LSA-C.C. art. 499 (repealed) provided:

"Fruits of the earth, whether spontaneous or cultivated; civil fruits, that is the revenues yielded by property from the operation of the law or by agreement; and the young of animals belong to the owner by right of accession."
[6] LSA-C.C. 461 provides:

"Corporeals and incorporeals. Corporeals are things that have a body, whether animate or inanimate and can be felt or touched.
"Incorporeals are things that have no body, but are comprehended by the understanding, such as the rights of inheritance, servitudes, obligations, and right of intellectual property." (Acts 1978, No. 728, § 1).
[7] LSA-C.C. art. 460 (repealed) provided:

"Things; corporeal and incorporeal. Things are divided, in the second place, into corporeal and incorporeal.
"Corporeal things are such as are made manifest to the senses, which we may touch or take, which have a body, whether animate or inanimate. Of this kind are fruits, corn, gold, silver, clothes, furniture, lands, meadows, woods and houses.
"Incorporeal things are such as are not manifest to the senses, and which are conceived only by the understanding; such as the rights of inheritance, servitudes and obligations."
[8] LSA-C.C. art. 551 provides:

"Kinds of fruits. Fruits are things that are produced by or derived from another thing without diminution of its substance.
"There are two kinds of fruits; natural fruits and civil fruits.
"Natural fruits are products of the earth or of animals.
"Civil fruits are revenues derived from a thing by operation of law or by reason of a judicial act, such as rentals, interest, and certain corporate distributions." (Acts. 1976, No. 103, § 1).
[9] LSA-C.C. art. 545 (repealed) provided:

"Natural, cultivated and civil fruits. Natural fruits are such as are the spontaneous product of the earth; the product and increase of cattle are likewise natural fruits.
"The fruits, which result from industry bestowed on a piece of ground, are those which are obtained by cultivation.
"Civil fruits are rents of real property, the interest of money, and annuities.
"All other kinds of revenue or income derived from property by the operation of the law or private agreement, are civil fruits."
[10] LSA-C.C. art. 2386 (repealed) provided:

"Ownership of fruits of paraphernal property. The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. The said instrument shall be executed before a Notary Public and two witnesses and duly recorded in the Conveyance Records of the Parish where the community is domiciled.
"If there is no community of gains, each party enjoys, as he chooses, that which comes to his hand; but the fruits and revenues which are existing at the dissolution of the marriage, belong to the owner of the things which produce them."
[11] LSA-C.C. art. 2339 provides:

"Fruits of separate property. The natural and civil fruits of the separate property of a spouse and bonuses, delay rentals, and shut-in payments arising from mineral leases are community property. Nevertheless, a spouse may reserve them as his separate property by a declaration made in an authentic act or in an act under private signature duly acknowledged by the spouses.
"As to the fruits and proceeds of immovables, the declaration is effective when filed for registry in the conveyance records of the parish in which the immovable property is located. (Acts 1979, No. 709, § 1, eff. Jan. 1, 1980).
[12] LSA-C.C. art. 2388 (repealed) provided:

"Husband's accountability for administration. The husband, who administers the paraphernal property of his wife, notwithstanding her formal opposition, is accountable to her for all the fruits, as well as those existing as those which have been consumed."
[13] LSA-C.C. art. 2390 (repealed) provided:

"Wife's alienation of paraphernal property; legal or special mortgage to secure proceeds received by husband. The wife may alienate her paraphernal property with the authorization of her husband, or in case of refusal or absence of the husband, with the authorization of the judge; but should it be proved that the husband has received the amount of the paraphernal property thus alienated by his wife, or otherwise disposed of the same for his individual interest, the wife shall have a legal mortgage on all property of her husband for the reimbursing of the same.
"The husband may release the mass of his property from this legal mortgage, by executing a special mortgage in the manner required in the preceding section, for dotal effects."
[14] LSA-C.C. art. 2391 (repealed) provided:

"Wife's action for restitution of paraphernal effects. The wife has, even during marriage, a right of action against her husband for the restitution of her paraphernal effects and their fruits, as above expressed."
[1] R.S. 9:1792 of the Trust Estates Law, the statute applicable when this trust became effective, provided in pertinent part:

"(4) `Income' means the return derived from principal.
(5) `Income beneficiary' means the beneficiary to whom income is presently or currently payable, or for whom it is accumulated, or who is entitled to the beneficial use of the principal presently and for a time prior to its distribution.
(9) `Principal' means the original trust property, and any property into which it may be converted, and any substitutions therefor which are eventually to be conveyed, delivered or paid to a beneficiary, while the return therefrom or use thereof or any part of such return or use in the meantime is to be taken or received by or held for accumulation for the same or another beneficiary.
(10) `Principal beneficiary' means the beneficiary ultimately entitled to the principal, whether named or designated by the terms of the trust or determined by operation of law." R.S. 9:1725 of the trust code now provides:
". . .
(2) `Income beneficiary' means a beneficiary to whom income is payable, presently, conditionally, or in the future, or for whom it is accumulated, or who is entitled to the beneficial use of principal presently, conditionally, or in the future, for a time before its distribution.
. . . . .
(4) `Principal beneficiary' means a beneficiary presently, conditionally, or ultimately entitled to principal."
The comment indicates that the purpose of the revision was to make it clear that a principal beneficiary may also be an income beneficiary.
[2] R.S. 9:1903 of the Trust Estates Law provided that "[t]here may be one beneficiary or two or more beneficiaries as to income or principal or both." Act 44 of 1962 added the provision that "[t]here may be separate beneficiaries of income and principal, or the same person may be a beneficiary of both income and principal, in whole or in part." R.S. 9:1805 of the trust code contains both of these statements.
[3] Additional evidence of the trustee's ownership is provided by the fact that where there are personal liabilities incidental to ownership of the trust property, e. g. for specific performance of contracts and covenants running with the land, these fall on the trustee just as if he were absolute owner. In addition, even a wrongful transfer of the legal title to trust property by the trustee to a good faith purchaser for value will cut off the beneficiary's rights against the purchaser. Until the enactment of recent statutes, a trustee's breach of trust could not be punishable as a criminal offense because the trustee's possession was lawful by virtue of his title to the property. Bogert and Bogert, supra.
[4] A supplemental amicus brief notes that there are only two other community property states, Idaho and Texas, in which the issue before us could arise; in the remaining jurisdictions, income from separate property remains separate property. There is no information about Idaho decisions, but the brief alleges that although earlier Texas cases classified trust income as separate property, cases decided during this century classify it as community property. The law review article to which the brief refers us concludes that, "Additional precedent will be required before it is clear in which direction the decisions on trust income will go." Branscomb and Miller, Community Property and the Law of Trusts, 20 Sw.L.J. 699, 725 (1966). That article also rejects resolutions of the problem which treat the beneficiary as if he owned an interest in the underlying property (the interpretation which seems to be urged by the amicus brief), noting that it is widely accepted that the trust itself is a distinct property-owning entity.

According to the brief, the "principal" Texas case in this area is Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799 (1925). That case, however, deals only with rents and revenues from real estate which formed part of the wife's separate estate, not with property held in trust, and it was decided solely on the basis of a provision of the Texas constitution limiting the sources of separate property acquired during marriage to that acquired by gift, devise or descent. The other case to which we are referred, Herring v. Blakeley, 385 S.W.2d 843 (Tex. 1965), deals with interests in a profit sharing plan and retirement annuity contract which had their inception during the existence of the community, not with interests in a trust acquired before marriage and by donation mortis causa. After divorce, the husband had named a trustee to be "death beneficiary" of the profit sharing plan and the annuity; it was held that the wife was entitled to one-half the value of the husband's interest in the two plans at the time of the divorce. The two articles cited from the 1966 Texas Bar Journal, at 449 and 901, are in complete disagreement as to whether trust income should be classified as separate property or as community property.
[5] In imposing the burden of proof of enhancement on the wife, the trial judge may well have been attempting to redress the inequity which would result from requiring a husband to show enhancement, but a wife to show merely benefit, when both spouses are separately managing their separate funds.